# CHARLESTON.

STATE *ex rel.* CLYDE B. JOHNSON, *Petitioner,· v.* OMER GIVEN, *President,* and GRANT COPENHAVER and W. H. O'DELL, constituting THE BOARD OF CANVASSERS OF KANAWHA COUNTY, and WALTER S. HALLANAN, *Respondents.*

(No. 5909)

Submitted January 3, 1927.   Decided January 8, 1927.   ·

Opinion Filed February 1, 1927.

1.  ELECTIONS—*Canvassing Board Required on Recount to Reject Ballots Not Indorsed by Both Poll Clerks Appointed to Act as Clerks of Receiving Board.*

    On a recount of the ballots cast at an election, the canvassing board is required, by section 66 of chapter 3 of the Code, to reject and not count all ballots not indorsed by both poll clerks appointed to act as clerks of the receiving board. (p. 707).

2.  SAME—*Mistake in Returns Showing That Clerks of Counting Board and Not Clerks of Receiving Board Indorsed Ballots May be Corrected by Board of Canvassers by Competent Evidence, But in Absence of Such Evidence Acted on by Board Court Will Not by Mandamus and Ex Parte Affidavits Not Considered by Board Compel it to Reconvene and Recount Ballots so Irregularly Indorsed.*

    If on a recount of the ballots cast at an election it appears from the returns that the poll clerks of the counting board and not the poll clerks of the receiving board indorsed the ballots, and it is represented that this is a mistake ·in the returns, the board of canvassers may by competent evidence correct the returns to correspond to the fact; but in the absence of such evidence acted upon by the board of canvassers, this court will not by mandamus compel the board to reconvene and recount the ballots so illegally indorsed. And ex parte affidavits on the subject not presented to or considered by the board of canvassers, will not be considered here on an application for such writ.   (p. 708).

3.  MANDAMUS—*Peremptory Writ of Mandamus Can Not Enlarge Upon Demand of Alternative Writ.* ˙

    . A peremptory writ of mandamus can not enlarge upon the demand of the alternative writ and award relief not warranted nor demanded by the original process.   (p. 709).

4.  ELECTIONS—*Candidate Appealing to Ballots Upon a Canvass of Returns of Election to Overcome Prima Facie Case Pre-*
    102 W. Va.

*sented by Returns Will be Presumed to Have Investigated and Satisfied Himself Whether the Ballots Have Been Preserved so as to Maintain Their Integrity, and Bound by the Result of the Recount Unless the Ballots Disclose on Their Face Some Infirmity Rendering Them Invalid.*

Where, upon the canvass of the returns of an election, the ballots are appealed to by a candidate to overcome the prima facie case presented by the returns, the first question to be considered by him is whether the ballots have been preserved in the manner required by law to maintain their integrity, and it will be presumed that in so appealing to the ballots he has investigated the facts and satisfied himself on this question before demanding such recount; and after such recount has been had, he will be bound by the result thereof unless the ballots when opened and considered disclose on their face by some infirmity rendering them invalid. (p. 710).

5.  SAME—*Duty of Board of Canvassers and Election Officers in Counting Ballots to Give Effect to Will of Voters if Possible Regardless of Irregularities in Markings Upon Ballots.*

In counting the ballots at an election, it is the duty of the board of canvassers, as of the election officers, to give effect to the will of the voters if possible to do so, regardless of irregularities in the markings upon the ballots.    (p. 517).

Original jurisdiction.

Petition in mandamus by Clyde B. Johnson against Omer Given, President and Grant Copenhaver and W. H. O'Dell, Board of Canvassers, Kanawha County, and Walter S. Hallanan, respondents.

*Writ awarded as to part of relief prayed for.*

*W. E. R. Byrne* and *Henry S. Cato*, for relator.

*H. D. Rummel, T. C. Townsend* and *M. F. Matheny,* for respondents.

MILLER, JUDGE:

By the petition and alternative writ peremptory process is sought to compel the board of canvassers to reconvene and declare that at the general election held in said county on November 2, 1926, petitioner Johnson, for the office of state senator from the eighth senatorial district, received 20,852 votes, and

that his opposing candidate, Walter S. Hallanan, received 20,660; and also to count for him 42 votes and for Walter S. Hallanan 20 votes, alleged to have been received by them respectively for said office at Precinct No. 16, Cabin Creek District, and to do and to leave undone certain other things complained of by petitioner in canvassing the returns and recounting the ballots cast at said election made upon the demand of both candidates, to be separately considered in the order of precedence set forth in the alternative writ.

But first, before proceeding to dispose of the merits of the case sought to be presented by the pleadings, we are confronted with the demurrer and motion of respondents to quash the alternative writ. Does the pleading then present a case calling for the extraordinary remedy? It is settled in this State, and generally, we think, that mandamus will not lie when the thing or things sought would be unnecessary, fruitless, unavailing or nugatory; that the court will not compel the doing of a vain thing simply to enforce a mere abstract right unattended by any substantial benefits to the relator. *Hall* v. *Staunton*, 55 W. Va. 684; *West Virginia National Bank* v. *Dunkle*, 65 W. Va. 210, 214. This principle was applied in *Ice* v. *Board of Canvassers*, 64 W. Va. 544, an election case, like this, where we held that mandamus would not lie to enforce such a mere abstract right in order to satisfy the pride or ambition of the petitioner. And for the failure of the alternative writ to allege how the petitioner would be benefited, if at all, by the action sought, the writ or petition was held to be insufficient to call for a decision of the questions raised.

Neither the petition nor the alternative writ in this case alleges how or the fact that petitioner will profit by the award of the peremptory writ. It alleges that on a final canvass and recount it was found that petitioner had received 20,772 votes and Hallanan 20,656, showing a clear majority in the county in favor of petitioner of 116 votes. What the result was in other counties of the senatorial district does not appear in the pleadings or elsewhere in the record so far as we have been

able to discover. So the demurrer to the writ probably ought to be sustained.

But waiving these technical grounds, not urged in the briefs or arguments of counsel, we will proceed to dispose of the case on its merits, that there may be a speedy disposition of the case, involving as it does, questions of public interest.

First, as to the right of petitioner to have counted for him the 42 votes and for Hallanan the 20 votes alleged to have been received by them respectively at Precinct No. 16, Cabin Creek District, as shown on the face of the returns of the election officers at that precinct. When respondents reached this precinct in the course of the recount, they and counsel for Hallanan discovered that the ballots contained in the sealed packages were indorsed by V. D. Johnson and Mrs. M. B. Smisko, who according to their oaths and certificates appearing on the face of the poll books and tally sheets were poll clerks for the counting board and not for the receiving board, these books and tally sheets in the same way showing that the clerks of the receiving board were respectively M. B. Smisko and W. M. Clendennin. These facts appear in at least seven places on the poll books and tally sheets. And so appearing and the ballots showing the indorsement of the poll clerks of the counting board and not the clerks of the receiving board, the board of canvassers sustained the motion of counsel for Hallanan to strike out or refuse to count any of said ballots. The question is, has petitioner shown a clear right to have them counted as required by the alternative writ?

When the facts thus appearing were so presented, counsel for petitioner called as a witness Mrs. M. B. Smisko, and on objection to her being sworn and to any testimony she might give respecting how she acted or as to the manner of conducting the election at said precinct, she was not permitted to testify. Whereupon counsel for Senator Johnson avowed on the record that if permitted to testify she would state that at said election she *acted as receiving clerk* and did not act as counting clerk, and also that V. D. Johnson *acted with her as receiving clerk* and not as counting clerk; also that she and the said Johnson signed their names as poll clerks on the

back of each and every ballot cast at said election in said precinct; also that if she signed her name to an affidavit purporting or which could be construed to be an affidavit of counting clerk, she did so by inadvertence, and likewise if said Johnson signed a similar affidavit, he also did so by like inadvertence; that both began and continued throughout the day to discharge the duties of poll clerks of the receiving board, and not as clerks of the counting board, which latter duties were performed by M. B. Smisko and W. M. Clendennin. A counter avowal was offered by counsel for Hallanan, that if said Johnson was in the State and could be present to testify, he would say that he and Mrs. Smisko qualified and acted as poll clerks of the counting board and not as clerks of the receiving board. We observe from the form and substance of the avowal that it was not proposed to prove by the witness that she and Johnson were duly appointed and qualified by anyone in authority or otherwise as poll clerks in one capacity or the other, but only that they acted as such clerks of the receiving board and signed all ballots as such. The statute, sections 8, 26a(33), 26a(34), 26a(35), chapter 3, Barnes' Code 1923, provides for the appointment of double election boards by the county court, and of their respective poll clerks by the boards themselves. The duties and functions of these two boards and of their clerks are prescribed by the statute; they are different, one from the other. The receiving board is first to organize, and take charge of the polls. The counting board is to proceed to the voting place four hours after the opening of the polls and take charge of the ballot boxes, counting the ballots already cast, etc. From a memorandum found in the record, it would appear that on the recommendation of the Democratic committee William Clendennin was appointed a receiving commissioner, Fred Simmons a counting commissioner, and Vernon Ashworth challenger; and upon the recommendation of the Republican committee Ralph Noble was appointed receiving commissioner, Irvin Summers counting commissioner, and Mrs. Okey Sinnett challenger; that upon the part of the county court V. D. Johnson was named receiving commissioner and Mrs. Leonora

Cossuth counting commissioner. All the affidavits of the election officers, commissioners and clerks, except his own, purport to have been taken before M. B. Smisko, his affidavit appearing to have been taken before V. D. Johnson, appointed receiving commissioner by the county court and not receiving poll clerk by the commissioners. On this important question involving the ruling of the board of canvassers petitioner's counsel tendered a number of ex parte affidavits, to which counsel for respondents objected, and proposed that if their objections should be overruled, to file the counter affidavits of V. D. Johnson and William Clendennin. But how can we consider any of these affidavits of witnesses not introduced on the recount by petitioner, or those conditionally offered by respondents?

It is practically conceded by counsel for petitioner that on the face of the returns, the ballots having been endorsed, not by the poll clerks of the receiving board, but by those of the counting board, the county court, as required by our statute, section 66, chapter 3 of the Code, and our prior decisions, were bound to reject the entire vote at that precinct. The face of the returns showed either that the poll clerks signing the ballots were usurpers, or that the duties of the receiving poll clerks had been delegated by them to the clerks of the counting board, a duty and responsibility which we have recently decided can not under our statute be lawfully so delegated. *Hallanan* v. *Hager, President., Etc.*, 102 W. Va. 689, decided December 14, 1926.

However, we think it was competent under section 68, chapter 3 of the Code, for the board of canvassers, or for the petitioner when confronted on the recount with the condition of the returns, to show by competent evidence, if they could, that there was a mistake in the returns, and to correct them according to the facts. Whether the evidence of Mrs. Smisko covered by the avowal of counsel was competent for this purpose, we need not say, for the board refused to admit it, and their action can not be inquired into on this writ, for the question is not presented. We can not in the first instance substitute our judgment for theirs. It was within their juris-

diction to first pass upon the admissibility, the competency and the weight of this evidence. And for the like reason the numerous ex. parte affidavits presented here on the question can not be considered by us. All the evidence would have to be presented to and considered by the board of canvassers. Whether we could on a proper writ compel them to receive and consider the evidence proposed and to correct the returns thereby, we are not now called upon to decide. The question is not before us. As we have observed, all that is demanded by the writ is that the board of canvassers be required to reconvene and count the votes for the respective candidates as returned. The peremptory writ can not enlarge upon the alternative writ and award relief not demanded. *Fisher* v. *Charleston,* 17 W. Va. 628; *Doolittle* v. *County Court,* 28 W. Va. 158; *Hebb* v. *Clayton,* 45 W. Va. 578; 38 C. J. 932; 18 R. C. L. 359; High on Extraordinary Legal Remedies (3rd ed.), 507; Merrill on Mandamus, 359. This court has no original jurisdiction except to command the inferior tribunal to do what upon the record it should do and has refused to do. So the writ will be denied in so far as it commands the respondents to count the ballots from this precinct.

The next command of the alternative writ is that respondents be required to disregard the ballots and the recount thereof as to Precinct No. 6, in Elk District, and to declare the result of the election at that precinct according to the returns of the election officers, that is, that petitioner received 50 votes and Hallanan 44 votes, and not according to the recount, 39 votes for petitioner and 55 for Hallanan. The relief thus sought is founded upon the theory that the evidence taken before the board of canvassers established beyond doubt that these ballots had not been preserved in the manner and by the officers prescribed by the statute, and that between the time when the envelope containing the ballots actually voted had been sealed up by the election officers and delivered to a commissioner or other officers for transmission to the county clerk's office, ballots not voted had been substituted for those actually voted, so as to change the result of the election on a recount of the ballots as demanded. On this question the

board of canvassers took considerable testimony, and upon consideration thereof with the returns, found as facts proven that all of said ballots were signed by the proper poll clerks, and that from an inspection of the envelope or container, together with all the evidence relating thereto, it was not shown that the seal upon the package or container had been broken, or that the ballots were at any time in the hands of any person or persons other than qualified election officers of said precinct from the time they were placed in the packages and sealed up until they reached the court house, or that they had been tampered with in any way, and that there was no evidence to destroy their integrity, and that the ballots constituted the best evidence of the true result of the election.

The first question presented where the ballots are appealed to is, were they preserved in the manner and by the officers prescribed by the statute, as we have decided they must be, to overcome the prima faci case made by the returns? *State ex rel. Mullins* v. *Board of Canvassers,* 102 W. Va. 267, 134 S. E. 597; *Dent* v. *Board of Canvassers,* 45 W. Va. 750; *Stafford* v. *Sheppard,* 57 W. Va. 84; *State ex rel. Gabbert* v. *Robinson et al.,* 88 W. Va. 708. The same strict rule prevails in other jurisdictions. *Davenport* v. *Olerich,* 104 Ia. 194; *Farrell* v. *Larsen,* 26 Utah, 283; *DeLong* v. *Brown,* 113 Ia. 370; *Windes* v. *Nelson* (Mo.), 60 S. W. 129; *Jeter* v. *Headley,* 186 Ill. 34; *Fenton* v. *Scott,* 17 Ore. 189.

When such an appeal to the ballots is taken by a candidate, it must be presumed that he has examined the returns including the sealed packages of ballots, and that in so far as anything appears thereon or therefrom he is willing to test the result of the election by the ballots, and offers them as evidence thereof, and that he means to be bound by the result thereof unless something not disclosed by the record appears on the face of the ballots themselves when opened, vitiating them and destroying their validity. *Stafford* v. *Sheppard, supra; McKinzie* v. *Hatfield et al.,* 77 W. Va. 508; *State ex rel. Jarrett* v. *Banks et al.,* 98 W. Va. 332; *Kirkpatrick* v. *Deegan,* 53 W. Va. 275. If such were not the law, a candidate after demanding such recount and ascertaining the re-

sult thereof to be against him or to his prejudice, would be permitted to then appeal to the face of the returns; and that was actually what happened in this case.

It is true there was some effort made by counsel for petitioner to show that the ballots at this precinct had been tampered with, but it was exceedingly weak, and consisted in what counsel professed to observe with reference to fifteen or sixteen of them, that the marking upon them appeared to have been made on a glass top table or some smooth surface, whereas the other ballots, as he observed, were manifestly marked on some rough table or rough surface. We have examined these sixteen ballots with reference to the observation of counsel. Every one of them is regularly signed on the back by the poll clerks; there is no question about that; and we can not conclude that any one of them bears any appreciable evidence of having been prepared or marked differently, or on a surface not provided by the election officers and in the election booths. It would be going too far, we think, to reverse the finding of the canvassing board on such evidence.

The discrepancy between the vote for petitioner and for Hallanan shown by the returns and that shown by the recount is out of proportion to the general run on recounts of ballots; but the evidence of Mrs. Court, a Republican, one of the poll clerks, is that when the counting of the ballots and tallying of the votes was proceeding, she being opposed to Hallanan deliberately misread some ten or twelve straight Republican ballots as straight Democratic ballots. If she did this, it would account for the discrepancy. As to the theory of substitution of other ballots by some one, imputed to Mr. Court, not called as a witness, but one of the election officers in charge of the returns in transmitting them to the court house, that was a matter for investigation before appeal was had to the ballots, not after the recount was had. Some respect is due the finding and judgment of the canvassing board; and we can not say, contrary to their finding, that any appreciable evidence was adduced or found on the face of the ballots showing tampering sufficient to destroy their integrity for the purposes of the recount.

It remains to dispose of the question presented by the alternative writ respecting certain individual ballots, not counted for petitioner, and others counted for Hallanan, which the writ alleges should have been counted for him. Of these there were twelve from Charleston Precinct No. 18, which during the counting of the ballots the day of the election were laid aside on a table for further consideration, and on account of some question raised as to how they should be counted for some of the candidates, and which were afterwards swept aside by some accident or design, and on completion of the count were found in a cuspidor, and were rescued and preserved inviolate in the container with the other ballots by the election officers, but not counted by them for anyone, and upon the recount demanded were not counted by the canvassing board. Of these twelve ballots the voters of five of them, by marking crosses in the circles at the head of the Democratic Ticket, with a few exceptions not important here, plainly indicated the general purpose to vote that ticket, and all of them for Johnson for senator. As to five of these ballots the voters by marking a cross in the circles at the head of the Republican Ticket, indicated their intention to vote that ticket, with certain exceptions, indicated by erasures and crosses opposite the names of opposing candidates on the Democratic Ticket. On three of them the name of Hallanan is erased and a cross mark made opposite the name of Johnson for senator on the Democratic Ticket. On one of them in addition to the cross mark in the circle at the head of the Republican Ticket, cross marks are placed opposite the names of E. T. England for congress and Walter Hallanan for senator. Other names on the Republican Ticket are erased and cross marks made opposite the names of opposing candidates on the Democratic Ticket.

The four ballots from Jefferson Precinct No. 5, according to the evidence, were mislaid by the board of canvassers during the recount, and at the conclusion of the recount of that precinct, the board found that they were four ballots short. On the same day, and during the recount of the ballots from Washington Precinct No. 3, these four ballots from Jefferson

No. 5 were found and were sealed up with and preserved in the envelope containing the ballots from Washington No. 3, but were not counted for any candidate. They were all straight Democratic Ballots, including the name of Johnson for senator, and properly authenticated by the indorsements of the poll clerks, and bore no evidence of having been tampered with. The objection of Hallanan to counting these ballots and the twelve from Precinct No. 18, Charleston District, was that they were not properly preserved; and that there was opportunity to tamper with them during the canvass, wherefore they should not be counted. As well might be said that any evidential document produced on the trial of a cause in court, if mislaid on the trial table, would lose its evidential quality thereby. There is nothing apparent on the face of any of these ballots showing tampering. The rule applicable to cases of opportunity to tamper during the transmission of the returns by the election officers is, we think, wholly inapplicable. Of course if there was proof of tampering, the ballots would have to stand the test applicable to other evidential papers when offered in evidence in a contest case, at least. No proof appears in this case justifying their exclusion. We determine that of the twelve ballots from Precinct No. 18, Charleston District, eight should be counted for Johnson, and three for Hallanan, and the twelfth counted for neither candidate, for upon the face of that one it is impossible to say what the voter intended. Also, that the four ballots from Jefferson No. 5, being straight Democratic Tickets, should be counted for Johnson, and the peremptory writ will so order. On the recount the board of canvassers refused to count these eleven and the four ballots, respectively, for either candidate.

Of the other ballots involved, Ballot No. 1, City of Charleston, Precinct No. 5, rejected on the recount, is marked with a cross in the circle at the head of the Democratic Ticket; a straight pencil mark about one-fourth of an inch long in the circle at the head of the Republican Ticket; also slight evidence of an attempt to erase the last mentioned mark by rubbing it out. This ballot should be counted for Johnson.

Ballot No. 1, City of Charleston, Precinct No. 45, rejected on the recount; cross mark in circle at the head of the Democratic Ticket; cross mark across the upper edge of the circle at the head of the Republican Ticket, partly outside of the circle. Impossible to determine the intention of the voter; and it should not be counted.

Ballot No. 1, Elk District, Precinct No. 4, rejected on the recount. Cross mark in the circle at the head of the Democratic Ticket; small circle or nought made with pencil in the printed circle at the head of the Republican Ticket. This ballot should be counted for Johnson.

Ballot No. 1, Jefferson District, Precinct No. 1, rejected on recount. Long heavy pencil mark in the circle at the head of the Republican Ticket. Straight mark, slightly crossed in the circle at the head of the Democratic Ticket. Should not be counted.

Ballot No. 1, Jefferson District, Precinct No. 7, rejected on the recount. Cross mark in the circle at the head of the Democratic Ticket; similar mark in the circle at the head of the Republican Ticket; no apparent effort to erase either mark. Should not be counted.

Ballot No. 1, Jefferson District, Precinct No. 11, rejected on the recount. Heavy cross mark in the circle at the head of the Democratic Ticket. Unmistakable evidence that heavy cross mark was erased from the circle at the head of the Republican Ticket. Should be counted for Johnson.

Ballot No. 1, Loudon District, Precinct No. 3, rejected on the recount. Straight line drawn through middle of Democratic Ticket from top to bottom. Hallanan's name marked out. Cross mark in square before Johnson's name. Irregular and unintelligible voting on remainder of ballot. Impossible to tell whether voter marked out the whole of the Democratic Ticket before or after attempting to vote for a number of candidates on each ticket. Can not be counted for either candidate.

Ballot No. 1, Loudon District, Precinct No. 14, rejected on the recount. No mark in either circle. Hallanan's and all other names on the Republican Ticket marked out by

pencil marks, with the exception of two names.   These two Republican candidates voted for by cross marks in the squares opposite their names.   No marks on Democratic Ticket except two names marked out.   Should not be counted for either candidate.

Ballot No. 2, Poca District, Precinct No. 3, rejected on the recount.   Small cross mark in the circle at the head of the Democratic Ticket.   Large cross marks at the head of both tickets outside of the circles.   Not to be counted for either candidate.

Ballot No. 2, Cabin Creek District, Precinct No. 14, counted for Hallanan on the recount.   Pencil line drawn through Democratic Ticket from top to bottom near the right hand margin of the ticket.   Properly counted for Hallanan.

Ballot No. 1, City of Charleston, Precinct No. 2, counted for Hallanan on the recount.   Democratic Ticket completely marked out by a number of pencil lines.   Cross in circle at the head of the Republican Ticket, one line forming the cross extending downward across the names of four candidates on the Republican Ticket.   Properly counted for Hallanan.

Ballot No. 1, City of Charleston, Precinct No. 23, counted for Hallanan on the recount.   Cross mark in the circle at the head of the Democratic Ticket.   Heavy vertical pencil marks an inch and a half long extending through Johnson's and other names on the Democratic Ticket, with lighter marks extending through eight or nine other names on the same ticket.   Should not be counted for either candidate.

Ballot No. 1, Elk District, Precinct No. 3, counted for Hallanan on the recount.   Evidence that cross mark has been erased from the circle at the head of the Republican Ticket; one candidate on the Republican Ticket voted for by a cross in the square opposite his name; two Democrats voted for in similar manner.   Should not be counted for either candidate for senator.

Ballot No. 1, Loudon District, Precinct No. 7, counted for Hallanan on the recount.   Pencil mark, not a cross, erased

JOHNSON *v.* BOARD OF CANVASSERS    [Jan. 1927

from circle at the head of the Democratic Ticket. Three can-
didates voted for by placing crosses in the squares opposite
their names. No marks on the Democratic Ticket. Should
not be counted for either candidate.

Ballot No. 1, Cabin Creek District, Precinct No. 3, rejected
on the recount. Cross mark in the circle at the head of the
Republican Ticket. Vertical pencil mark extending through
the middle of the Republican Ticket across the first eight
names. Should not be counted for either candidate.

Ballot No. 2, Loudon District, Precinct No. 12, rejected on
the recount. Marked like Ballot No. 1, Cabin Creek District,
Precinct No. 3. Should not be counted.

Ballot No. 3, Loudon District, Precinct No. 12, rejected
on the recount. Similar in all respects to the two ballots last
above described. Not to be counted.

Ballot No. 1, Union District, Precinct No. 7, rejected on
the recount. Cross mark erased from the circle at the head
of the Democratic Ticket. One candidate on the Democratic
county ticket voted for by cross in the square opposite his
name; two candidates on Republican magisterial district ticket
voted for in a similar manner. Not to be counted for either
candidate for senator.

Ballot No. 2, City of Charleston, Precinct No. 4, counted
for Hallanan on the recount. Large and distinct black pen-
cil cross marks in both circles at the top of the ballot. Evi-
dence that red cross was erased from the circle at the head
of the Democratic Ticket before the black pencil mark was-
made. Not to be counted for either candidate.

Ballot No. 1, City of Charleston, Precinct No. 28, counted
for Hallanan on the recount. Rooster at the head of the
Democratic Ticket marked out by heavy pencil marks. Should
be counted for Hallanan.

Ballot No. 1, Jefferson District, Precinct No. 9, counted for
Hallanan on the recount. Cross in the circle at the head of
the Republican Ticket. Cross mark erased from the circle at
the head of the Democratic Ticket. To be counted for Hal-
lanan.

In disposing of these individual ballots, we have endeavored as best we could to respect the provisions of section 66, chapter 3 of the Code, to disregard and not count "any ballot or part of a ballot, from which it is impossible to determine the elector's choice of candidates," and at the same time we have sought when possible, to determine the will of the voter and give effect to his choice, according to the statute as interpreted in prior decisions, and to reject as a whole none when there was anything therein to indicate the elector's choice. *Doll* v. *Bender*, 55 W. Va. 404; *Daniel* v. *Simms*, 49 W. Va. 554; *Dunlevy* v. *County Court*, 47 W. Va. 513.

A peremptory writ has been awarded in accordance with conclusions reached and directions given herein.

*Writ awarded as to part of relief prayed for.*