RAYMOND J. FUNKHOUSER *v.* W. T. BROTHERTON *et al.*

(No. 9412)

Submitted September 24, 1942. Decided October 6, 1942.

Fox, PRESIDENT, and KENNA, JUDGE, dissenting in part.

*T. G. Nutter, Phillip H. Hill, Eugene T. Hague* and *Randolph Bias,* for petitioner.

*Lee, Blessing & Steed* and *Leslie D. Price,* for respondents.

714

Rose, Judge:

This is a proceeding in mandamus by Raymond J. Funkhouser, a candidate on the Republican ticket for the nomination for United States Senator, in the primary election held August 4, 1942, against W. T. Brotherton, Carl C. Calvert and Mont Cavender, commissioners of the County Court of Kanawha County, and as such, *ex officio* the board of canvassers of said county, and W. Chapman Revercomb and John L. Gillespie, who also were candidates for the same nomination. The relator seeks a peremptory writ of mandamus requiring the canvassing board to reconvene as such and then make a new tabulation of the votes of Kanawha County for the Republican candidate for the United States Senate, excluding and omitting therefrom, all the votes returned from Precinct No. 105.

The relator represents that at the time of the preparation of his petition, the election returns throughout the state showed him to have 47,309 votes for said nomination and the respondent Revercomb to have 47,373 votes; that in precinct No. 105, twenty ballots have been returned and counted for the relator and 136 for the respondent Revercomb, and that, therefore, the exclusion of all of said ballots will result in a plurality of fifty-two votes for the relator in the total vote of the state.

The relator bases his demand for the rejection of these votes on the grounds (1) that from the documentary returns from the precinct, it appears that although only a single board of five was appointed for that precinct, eleven persons purported to act in some capacity, but it is impossible to determine what persons were the election officials at said precinct, or in what capacity any pretended official purported to act; and, particularly, (2) that the Republican ballots here involved show that the names of six different persons are written on ballots where the name of the poll clerks should have been written, whereby it becomes, and is, impossible to determine whether two legally appointed and qualified poll clerks, or in fact any poll clerk, signed any of the said ballots.

Neither the members of the canvassing board nor John L. Gillespie made any response to the rule issued herein; but the respondent Revercomb filed a return and answer in which he undertakes to explain and to justify the method of holding the election in the precinct in question. A considerable volume of evidence was taken on behalf of the relator and the respondent. From the documentary· evidence, it appears that the county court duly appointed the following election officials for precinct No. 105: Homer H. Lowe, Democratic clerk, and William Henry Branham and George Sadaro, Democratic commissioners; and Zundel Hark, Republican clerk and Mulligan Chappell, Republican commissioner. The depositions taken show without question that Hark did not appear at the polls, and that Mulligan Chappell, the person appointed by the county court to be Republican commissioner, was, by the remaining officials, chosen clerk in lieu of Hark; and that the same officials then selected Robert Humphreys, a Republican voter then present to be Republican commissioner in the place of Chappell. The evidence further shows that more than 400 voters were registered in this precinct, a number for which the law requires both a receiving and a counting board of five members each; and that the election officials chosen as before stated, then proceeded to appoint and organize a counting board from among the voters present, naming Willie Mae Ford, Clarence Allen, John Campbell, William Roberts, Joseph Sadaro and Andrew Holz, being six members instead of five. It is further agreed by all witnesses that the official oath of this group of officials was administered by William H. Branham, a Democratic commissioner appointed by the county court, who, in turn, was sworn by George Sadaro, another commissioner so appointed. These oaths were read from the poll book, but no witness was able to say whether the oath actually administered was that of a commissioner or of a poll clerk.

From this point, it appears that confusion followed in the duties performed by these officials. Neither the documentary evidence nor the oral testimony makes wholly

clear what each did; but it does appear clearly that some of the officials purported to act in various capacities, some of them even rotating between the receiving board and the counting board. Apparently, each official did whatever he thought needed to be done.

We do not consider it necessary to determine whether the counting board so established was legally constituted, inasmuch as the mere counting of the ballots is not here involved. Also, we need not determine what each pretended official attempted to do, since they all did purport to qualify and act in some official capacity, but it is necessary to pass upon the legality of the signatures on the ballots voted, since the proper signing of the ballots by the poll clerks is necessary to their validity. *State* v. *Board of Canvassers*, 102 W. Va. 703, 136 S. E. 772; *State* v. *Heatherly*, 96 W. Va. 685, 123 S. E. 795.

Homer H. Lowe was legally appointed Democratic clerk for this precinct. We think also that the evidence, both documentary and parol, shows clearly that he qualified as such, and, for at least part of the time, actually performed the duties of such clerk. He signed the certificates of election as clerk. The formal clerk's oath included in the Democratic poll book bears his name inserted at its beginning in the blank immediately following the pronoun "I," and which appears to be in the same handwriting by which his name is signed to the certificates. It is true that this oath does not bear his signature at its close, but this is also true of the oath of all these officials and purported officials. Each of these oaths is signed by William H. Branham, commissioner, as the officer administering the same. These records, therefore, show with reasonable certainty the qualification of Lowe as clerk. It further appears from the oral evidence that, while he did not at all times, nor even at the beginning of the election, act as clerk, he was in and about the polls throughout the day and, of course, did sign the returns in his official capacity. We conclude, therefore, that he was the legally appointed, qualified and acting Democratic clerk of this precinct.

The testimony further shows without question that, at

the opening of the polls at this precinct, Zundel Hark, who had been appointed by the county court as Republican clerk, failed to appear, and that thereupon, the remaining officials there present appointed Mulligan Chappell to act as clerk in lieu of Hark, and chose Robert Humphreys, a Republican voter then present, to be commissioner in the stead of Chappell. The clerk's oath in the Republican poll book contains the name of Mulligan Chappell in what appears to be the same handwriting by which he signs the certificates of election, but inserted in the same manner as that of Homer H. Lowe. This oath is not signed by Chappell at its close, but his name, oddly, appears in the blank for the signature of the attesting officer. All witnesses agree that Chappell, from the opening of the polls, proceeded to act as Republican receiving clerk, and, although absenting himself at times, continued as such clerk until four or four-thirty o'clock in the afternoon, after which his absence continued until the closing of the polls. We are of opinion that this showing clearly establishes that Mulligan Chappell was legally chosen and qualified, and that he did act as Republican receiving clerk at this precinct.

These conclusions mean that we do not find a sufficient reason for rejecting the ballots in question which were signed by both Homer H. Lowe and Mulligan Chappell, Democratic and Republican receiving clerks, respectively.

The other persons whose names appear on various ballots, however, appear in an entirely different status. William H. Branham was actually appointed a commissioner for said precinct, acted as such by administering the oath to the other officials, which a clerk could not do, performed the duties of a counting commissioner and signed all the returns as such. He states in his own testimony that at the opening of the polls he proceeded to sign ballots as a clerk merely because he was sitting closer to them than any of the other officials. He absented himself when his duties as counting commissioner required him so to do, was away from the polls three-fourths of an hour for lunch, and for a shorter time on another

occasion on private business. Joseph Sadaro, who unquestionably was counting clerk, merely acted as receiving clerk when Branham and Lowe were absent, while George Sadaro, who was appointed by the county court as a commissioner and who acted and signed certificates as counting commissioner, denies that he signed any ballots, although his name appears on a number. Robert Humphreys, unquestionably was legally chosen Republican commissioner in lieu of Mulligan Chappell, and by his own evidence only signed ballots in Chappell's absence. All witnesses agree that the only oaths administered were those taken before the opening of the polls, and that no new oath was taken by any of these persons assuming to act as substitute clerks. It is also perfectly clear that there was no appointment, formal or informal, of any of these substitute clerks, but that they acted merely without objection on the part of the other officials. Nor was any persons appointed to fill the positions from which these pretended clerks were attempting to be transferred. It is, therefore, beyond question that the election at this precinct was conducted on the plan of each official doing whatever seemed necessary to be done or came convenient to his hand. Clerks cannot be thus appointed and qualified. If this practice were permitted, any and all officials, or even outsiders, might sign ballots as poll clerks, and their signatures be regarded as valid merely because no objection was made thereto. We hold that all the ballots signed by Branham, George Sadaro, Joseph Sadaro or Robert Humphreys are invalid, and must be rejected.

This conclusion must not be construed as holding that substitute clerks may not be appointed when the necessity therefor arises. Such appointment, of course, can be made; but, if made, it must appear, preferably by documentary and record evidence, and, in all events, clearly and beyond any dispute, that such new clerk was actually selected, qualified and acted. It is not sufficient to prove such person a legal clerk by mere evidence that he ob-

truded himself into the position and signed certain ballots without objection on the part of the other officials.

A peremptory writ of mandamus will issue in accordance with this opinion.

*Writ awarded.*

JUDGES KENNA and Fox, dissenting in part:

Our objection to the opinion of the majority is that it does not go far enough. We think the writ should have been awarded as prayed for, and the vote cast in precinct 105 entirely eliminated in certifying the returns from Kanawha County. As we view the matter the situation, as fully developed in the majority opinion, clearly shows that at no time while the election was in progress could it be said that any two legally acting clerks of election signed any one ballot. As to the Republican clerk, Chappell, he assumed to act as clerk under some character of appointment in place of the regular clerk designated by the county court. He was not present and acting as such for the entire day. He may have been a *de facto* officer and his acts as clerk entitled to recognition as such. The Democratic clerk appointed by the county court appeared on the scene early in the morning, but did not assume the duties of his position, and another election officer, without taking any oath as such, took over the duties of receiving clerk and did work as such intermittently throughout the day. This man, Branham, had been appointed as a commissioner of election and qualified as such by taking the prescribed oath, and then as commissioner administered an oath to the other election officers. Afterwards, during the day he switched from one character of work to another, acting as receiving clerk only part of the time. Later in the afternoon, Lowe, for the first time, assumed the duties of clerk and signed some of the ballots along with the Republican clerk. Neither Branham nor Lowe was legally entitled to act as clerk at the time they assumed to sign ballots as such. We return to our original statement that the record does

not show that any ballot was signed at the same time by any two legally appointed clerks acting as such.

For these reasons, we are of the opinion that the vote of the entire precinct should have been eliminated from the canvass.