STATE *ex rel.* DUNCAN W. DAUGHERTY *v.* COUNTY COURT OF LINCOLN COUNTY *et al.*

(No. 9630)

*and*

STATE *ex rel.* LUCIEN W. BLANKENSHIP *v.* BOARD OF CANVASSERS OF LINCOLN COUNTY *et al.*

(No. 9633)

Submitted July 31, 1944. Decided September 6, 1944.

36

Howard B. Lee, for petitioner Daugherty.

M. O. Litz and Buford C. Tynes, for petitioner Blankenship.

Carl A. McComas, for respondents.

ROSE, PRESIDENT:

In the primary election held May 9, 1944, Lucien W. Blankenship, Duncan W. Daugherty and Carl C. Douthitt

were candidates for the Republican nomination for the position of Judge of the Sixth Judicial Circuit, consisting of Cabell, Lincoln and Putnam Counties.

On the face of the returns Blankenship received a total vote in the three counties of 5,253 votes, and Daugherty a total of 5,153 votes. Douthitt received a lesser number and is not involved in this proceeding. A recount of certain precincts in Cabell County increased Blankenship's plurality to 126.

Daugherty requested a recount of the votes in Lincoln County, whereupon Blankenship also made request for a recount of the same votes. As a result of this recount, Blankenship's vote in Lincoln County was reduced from 899 to 866, while that of Daugherty was increased from 568 to 731, thereby giving Daugherty a plurality in the circuit of 96 votes, carrying with it the nomination for judge.

Within the time and in the manner required by Code, 3-9-2, Blankenship served on Daugherty a notice that on the first day of the next term of the County Court of Lincoln County, beginning July 3, 1944, he would move the court to docket and hear a contest of the vote cast in Lincoln County for the Republican nomination for Judge of the Sixth Judicial Circuit.

On the appointed day Blankenship appeared before the County Court of Lincoln County and duly made his motion for contest, which was objected to by Daugherty on the ground that the court had no jurisdiction to hear and determine such contest. The objection was overruled and the motion for contest was sustained and set to begin on the 10th day of July, 1944. On the 5th day of July, 1944, Daugherty appeared by counsel before four members of this Court, in chambers in vacation of this Court, and presented his petition praying for a writ of prohibition against the members of the County Court of Lincoln County, to inhibit them from proceeding with said contest. The sole ground on which the writ was sought was that the court was without jurisdiction to hear such con-

test. A rule in prohibition was awarded accordingly, returnable to the first day of a special term of this Court, to begin on the 27th day of July, 1944.

The members of the county court filed their verified return to the rule in which they state that in taking jurisdiction of this contest they were merely performing their duty under Code, 3-4-25, and Code, 3-9-2 and 3, and that "from other facts before said County Court, are of the opinion that there is sufficient ground to believe that the ballots in said 8 precincts may have been illegally tampered with by persons unknown to these respondents, and therefore may not have shown a true and correct result of the votes cast in said 8 precincts for the Republican nomination for the office of Circuit Judge, as aforesaid."

The petition was amended, making Blankenship a party; whereupon, he, Blankenship, appeared and filed his return to the rule issued, in which he sets out at some length the frauds which he had made a basis for the contest, and denied that the county court was usurping or illegally assuming authority to hear the contest. To these returns Daugherty filed demurrers, raising the single question whether the County Court of Lincoln County had jurisdiction to hear and determine such contest.

We are clearly of opinion to sustain these demurrers and to award the writ of prohibition inhibiting the County Court of Lincoln County from proceeding further upon said notice of contest.

An election contest is purely a constitutional or statutory proceeding. The common law knew no such method of testing the validity of a nomination or election. 29 C. J. S., Elections, Section 246. Our Constitution confers on county courts jurisdiction to hear and determine contests in strictly limited cases. Section 24 of Article VIII relating to county courts provides, among other powers:

"They shall, in all cases of contest, judge of the election, qualification and returns of their own members, and of all county and district officers,

subject to such regulations, by appeal or otherwise, as may be prescribed by law."

Code, 3-9-1, conforms precisely to this constitutional limitation:

> "In all cases of contested elections, the county court shall be the judge of the election, qualifications and returns of their own members, and of all county and district officers."

The same limitation is preserved in the statute relating to contests arising out of primary elections for the nomination of candidates for office:

> "Any candidate for nomination for an office to be filled by the voters of a county, school district or of a magisterial district, or any candidate for membership of any county political executive committee, may contest the primary election before the county court of the county. The procedure in such case shall be the same as that governing the contest of . a general election by candidates for county offices or offices in school districts or magisterial districts. * * *" Code, 3-4-25.

The county court, having no inherent or common law authority to conduct a contest for any kind of office and having no such authority conferred upon it by the Constitution or by statute to hear such contest, involving other than a county, district, or school district office, is, of course, barren of such power. Accordingly, the writ prayed for must issue.

By a notice dated July 18, 1944, and served on the members of the Canvassing Board of Lincoln County on the 21st and 22d days respectively of July, 1944, Blankenship requested that Board "to reconvene and to determine and certify the results of said primary election for the nomination for the office of Judge of the Sixth Judicial Circuit, in said precincts, along with the results in the other precincts of said county, from the official certificates of re-

turns as made and certified by the precinct election officers of said eight precincts and as determined by this Board upon their original official canvass", assigning as grounds therefor the alleged tampering with and changing of certain specified ballots of the eight named precincts. The Board took no action on this notice.

On the 27th day of July, 1944, this Court, on the petition of Blankenship, awarded a rule against the members of the Board of Canvassers requiring them to show cause, if any they could, why a writ of mandamus should not issue requiring them to reconvene and redetermine the votes of that county for the Republican nomination for Judge of the Sixth Judicial Circuit "from the certificates of the respective precincts and returns by the election officers of the several voting precincts, as corrected and determined by said Board upon its original canvass of the ballots of said primary election and to recertify the results of said primary election to the Secretary of State of the State of West Virginia accordingly."

This petition of Blankenship alleged, in addition to the necessary formal matters, "that the ballot boxes containing the ballots cast at said primary election have been since the same were delivered by the election officers to the Clerk of the County Court of said county and are now in the record room of the office of said clerk to which the public has access; that the Board of Canvassers of Lincoln County did not, after canvassing the returns of said Primary election from that county preserve the ballots by carefully sealing those from each precinct in a new envelope and each member of the Board writing his name across the place where such envelope is sealed, as required by the statute, (Code 3-5-33), but merely fastened the new envelope in which the ballots of each precinct were placed by small metal staple or staples which could easily be removed and replaced without leaving any evidence of tampering; that at the time of the recount of the ballots cast at said Primary election in Lincoln County, none of the envelopes containing the ballots was, or had been in any manner, sealed, and each envelope was fast-

ened only by small metal staple or staples, similar to those used in fastening said envelopes at the time of the canvass of the returns; that in the course of the recount of the ballots cast in Lincoln County at the said Primary election, the Clerk of the County Court of said County removed from the ballot boxes of all the thirty-two precincts of the County the envelopes containing the ballots, and opened the same without giving the Members of the Board of Canvassers, the petitioner, or counsel, an opportunity to examine said envelopes for the purpose of determining whether any of them had been tampered with; and that said Clerk upon opening each of said envelopes immediately caused the same to be carried away and burned, in violation of the statute (Code, 3-5-33), which required each of said envelopes and the ballots taken therefrom to be sealed in a new envelope"; that the only appreciable changes in the vote for said nomination for judge found upon said recount were in eight precincts, in one of which precincts thirty ballots marked for the petitioner were found also marked by a cross, distinctly different from the other markings on said ballots, for the candidate Douthitt, whereby said thirty votes were counted for neither candidate; and in the seven other precincts of which ballots were found marked for Daugherty by a cross distinctly different from the other marks on said ballots; asserts that the character of these distinctly different marks was such as to be conclusive evidence of actual tampering with and change of said ballots.

To this rule the members of the Board of Canvassers made return, in which they do not deny the principal allegations of the petition, but state that they "are not advised as to whether the changes which were made in the canvass of the returns" at such recount "are so radical as to furnish conclusive evidence of tampering" as alleged in the relator's petition; and neither admit nor deny the allegations of fact, nor the inferences drawn by the relator therefrom. They further state that "the reason why said ballot envelopes were not 'sealed' was because

no sealing wax was available to respondents for such purpose", and neither admit nor deny that the envelopes, "as stapled, could be easily removed and replaced".

Mr. Daugherty made a formal return in which he denied certain allegations of fact contained in the relator's petition, and called for strict proof of other such allegations which he neither admitted nor denied. He also filed two further pleadings, designated "Special Plea No. 1" and "Special Plea No. 2" respectively.

On the submission of the case here a stipulation was entered into between Blankenship and Daugherty that the proceedings should be heard and determined by this Court upon: (1) The petition of the relator; (2) the return and answer of the respondent county court, "insofar as the same is not inconsistent with said petition"; and (3) Special Pleas 1 and 2 of the respondent Daugherty, with certain stated modifications to be considered as having been made in each of said pleas; (4) the agreement that Blankenship "did at various times during the said recount, call the attention of the Board to the peculiar markings on many of the ballots from the 8 precincts and stated from time to time to the said Board of Canvassers that many of said ballots were illegal and irregular"; (5) that the reason why he made no such motion or motions respecting the aforesaid matters during said recount is because he believed that said matters could not be determined by the Board of Canvassers as such, but only by the County Court sitting as a court in determining a contest; and (6) that the whole of Special Plea No. 2 is withdrawn except the allegation that the relator's notice to the Board of Canvassers of July 18 was not served upon the respondent Daugherty.

Special Plea No. 1 of Mr. Daugherty, in substance, alleges that "at no time during said recount, nor at the conclusion thereof, did the relator, Lucien W. Blankenship, object to counting the ballots cast for the candidates for such nomination * * * nor did said relator Blankenship move the said Board, for any reason whatsoever, to reject the recount results in any one or more of

said precincts * * * nor did the said relator, at the conclusion of said recount, make any objection to the result thereof or make any motion to disregard any ballots or the recount from any precinct because the ballots had been tampered with or lost * * * or for any other reason or to accept in lieu of said recount the certification of said election officers * * * and that the said recount of the said Board of Canvassers having been completed on June 1, 1944, and without any objection or motion by said Blankenship the said Board ordered the results certified as provided by law, after which the Board adjourned *sine die* * * *"; and says that the relator, having failed to make seasonable objection to the counting of the ballots, and having failed to make any timely motion to disregard the result of said recount, cannot now, after the lapse of fifty-three days, assert the rights which he undertakes to enforce in this proceeding.

By this stipulation, Daugherty's return to the rule is eliminated. It is to be observed that no charge of impropriety is made against the candidate Daugherty, and no suspicion arises against him from any fact or circumstance in the case. On the contrary, he takes the highly ethical position of submitting the case on pure questions of law for such action as the Court may deem right.

The sole questions briefed, argued and submitted to this Court are as follows:

1. Whether the petitioner, by reason of having made no formal objection of record to the counting of the ballots, after the alleged discovery of their exposure to access and actual mutilation, and before the certification of the results and adjournment of the Board of Canvassers, has lost the right to do so now; and

2. Whether the lapse of time bars the maintenance of this proceeding.

Is this Court utterly impotent to relieve against this gross and admitted fraud, solely on the ground that the "record" of the Board of Canvassers fails to show that the relator or that Board took preliminary steps as a foundation for the present proceeding? We shall not so

concede unless confronted by an absolutely insurmountable legal bar. The Supreme Court of the United States, in the case of *Hazel-Atlas Glass Co.* v. *Hartford-Empire Co.,* 322 U. S. 238, 64 S. Ct. 997, decided May 15, 1944, uses this language: "Surely it cannot be that preservation of the integrity of the judicial process must always wait upon the diligence of litigants. The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud."

The fact that the notice and demand upon the Board of Canvassers, made on the 24th day of July, 1944, for the elimination of the questioned ballots, were not served upon the respondent Daugherty, is immaterial. Request for a recount is not required to be served on a rival candidate, nor is there any requirement that such candidate be given notice of any motions made by a party to the recount.

The question whether the relator properly protected his rights by proceedings before the Board of Canvassers is a more serious one. No statute prescribes the manner of conduct regarding a recount or the character of a record thereof. *Brawley* v. *County Court,* 117 W. Va. 691, 187 S. E. 417. The statute applicable merely says:

"After canvassing the returns of the election, the board shall, upon the demand of any candidate voted for at such election, open and examine any one or more of the sealed packages of ballots, and recount the same; * * *". Code, 3-5-33.

This Court has suggested that relief by mandamus may be denied where the relator has not made a proper demand, motion, or objection before the Canvassing Board. *State ex rel. Vandelinde* v. *McComas,* 97 W. Va. 664, 125 S. E. 816. On the other hand, the conditions justifying mandamus have been stated without premising a prior demand. *State ex rel. Simon* v. *Heatherly,* 96 W. Va. 685, 123 S. E. 795; *Stafford* v. *Sheppard,* 57 W. Va. 84, 50 S. E. 1016; *Daniel* v. *Simms,* 49 W. Va. 554, 39 S. E. 690. The statute authorizing mandamus in such cases simply says:

"Any officer or person, upon whom any duty is devolved by this chapter, may be compelled to perform the same by writ of mandamus." Code, 3-5-41.

Ordinarily, one seeking a writ of mandamus must have demanded of the inferior tribunal the action which he seeks to coerce; but this prerequisite applies in its full vigor only to attempts to assert peculiarly private rights. When the right to be vindicated is also one in which the public has an interest, a prior demand for action is not necessary. In such cases the mandatory law is treated as a continuing imperative demand for the performance of the official duty. *High's Extraordinary Legal Remedies,* 3d Ed., Section 41; *2 Spelling, Extraordinary Remedies,* 2d Ed., Section 1447; *Northern Pacific Railroad Co.* v. *Washington Territory ex rel. Dustin,* 142 U. S. 492, 12 S. Ct. 283, 35 L. Ed. 1092; *State ex rel. Foote* v. *Bartholomew,* 103 Conn. 607, 132 A. 30; *Board of Commissioners of City of Manchester* v. *Montgomery,* 170 Ga. 361, 153 S. E. 34; *State ex rel. Thompson* v. *Jones,* 328 Mo. 267, 41 S. W. (2d) 393; *State ex rel. Morris* v. *Wrightson,* 56 N. J. L. 156, 28 A. 56; *State ex rel. Grinsfelder* v. *Spokane Street Railway Company,* 19 Wash. 518, 53 P. 719; *Attorney General* v. *City of Boston,* 123 Mass. 460; *Commonwealth ex rel. Armstrong* v. *Commissioners,* 37 Pa. 277. This rule has been directly applied in election cases. *State ex rel. Steadley* v. *Stuckey,* 78 Mo. App. 533; *Smith* v. *Lawrence,* 2 S. D. 185, 49 N. W. 7; *Lyman* v. *Martin,* 2 Utah 136. The writ of mandamus as authorized in election cases in this state greatly broadens and liberalizes the common law right, as to both its scope and the procedure therein. *Marquis* v. *Thompson,* 109 W. Va. 504, 155 S. E. 462; *Sanders* v. *Board of Canvassers,* 79 W. Va. 303, 90 S. E. 865; *Marcum* v. *Ballot Commissioners,* 42 W. Va. 263, 26 S. E. 281. The flexibility of mandamus in election cases and the inapplicability of certain common law rules thereto give the courts considerable latitude on procedural questions not controlled by statute.

But we cannot say that there was actually no demand. True, the "record" of the Board of Canvassers shows none. As certified here, that record is headed:

> "Recount held May 31, 1944 and June 1, 1944. The three following members were present. S. M. Johnson, President. H. P. Harmon, Member. Jesse Manns, Member".

There is no statement as to what the recount covered nor at whose instance it was made, nor as to what parties or persons appeared, nor as to any other thing done. There is a tabulation of the thirty-two precincts, with nothing shown after any of them except the eight in question, and, with reference to these precincts, it merely shows a total of the votes finally ascertained. Concluding this record is the summary—"Daugherty 737, Blankenship 866", without showing where the votes came from. Then follow these sentences:

> "No Motions were made, no objections made, no requests to take evidence, no evidence taken, no orders entered.
>
> "On June 1, 1944, the recount being completed the board of Canvassers adjourned, without day, after ordering the Clerk to certify the results to the proper authorities."

But a Board of Canvassers is not a court of record, and the ordinary requirements for making up a record in a court of record are not applicable to such tribunal. Nor is the record which is made conclusive of what was done. What the Board did or did not do may be shown by parol. Good faith, indeed, requires that every interested party should, in some way, substantially indicate to the Board what procedure he wishes to be taken and such objections as he has to the things the Board does, and the fact of such suggestions or objections ought to be preserved of record, but where the things done are not disputed, the absence of a record thereof will not be fatal.

By stipulation herein it is shown that the relator repeatedly called the attention of the Board of Canvassers to the illegality and irregularity of the questioned ballots, and by the return of the members of the county court in the prohibition proceeding, a copy of which is made an exhibit with the petition herein and not denied, they state that they "are of opinion that there is sufficient ground to believe that the ballots in said eight precincts may have been illegally tampered with by persons unknown to these respondents and therefore may not have shown a true and correct result of the votes cast in said eight precincts for the Republican nomination for the office of circuit judge as aforesaid."

It is, therefore, perfectly clear, not only that the Board of Canvassers observed the irregularities and evidence of fraud in the ballots now in question, and was impressed with their invalidity, but that it was given at least informal actual notice that the relator Blankenship insisted upon their illegality. Apparently, the only reason for its not discarding these exposed and mutilated ballots was that a majority of the Board thought it had no legal power to consider the matter, except as a county court and in a formal contest. The relator himself fell into the same error. Some cases in this state intimate the same conclusion. *State ex rel. Sizemore* v. *Hunter,* 86 W. Va. 544, 103 S. E. 678; *Doll* v. *Bender,* 55 W. Va. 404, 47 S. E. 293. But where the question has come squarely before this Court we have not hesitated, by mandamus, to compel the Board of Canvassers to act correctly with reference to ballots under such circumstances. *State ex rel. Jarrett* v. *Banks,* 98 W. Va. 332, 128 S. E. 301; *State ex rel. Vandelinde* v. *McComas, supra; McKinzie* v. *Hatfield,* 77 W. Va. 508, 87 S. E. 879; *Stafford* v. *Sheppard, supra; Dent* v. *Board of Commissioners,* 45 W. Va. 750, 32 S. E. 250.

The ballots before the Board of Canvassers were all absolutely void by reason of their illegal exposure, and the ballots which changed the election results were also void from actual tampering. *Parsley* v. *County Court of*

*Raleigh County,* 113 W. Va. 300, 167 S. E. 738; *Taylor* v. *Board of Canvassers,* 119 W. Va. 378, 193 S. E. 575; *State ex rel. Mullins* v. *Board of Canvassers,* 102 W. Va. 267, 134 S. E. 597; *State ex rel. Gabbert* v. *Robinson,* 88 W. Va. 708, 107 S. E. 763. The Board, therefore, had before it no ballots whatever legally capable of being counted. In such case its duty was simple and mandatory, and did not depend upon the request of some person in interest. It is true that such Board cannot go behind or beyond the returns before it. *Reynolds* v. *Board of Canvassers;* 117 W. Va. 770, 188 S. E. 229; *State ex rel. Hatfield* v. *Farley,* 97 W. Va. 695, 126 S. E. 413; *Brown* v. *Randolph County Court,* 45 W. Va. 827, 32 S. E. 165; *Brazie* v. *Fayette County Commissioners,* 25 W. Va. 213. But the question of the validity of these ballots and of their integrity would not lead the Canvassers beyond or behind the returns. The Board, of necessity, had to consider and determine whether or not it had before it genuine ballots before it could exercise any function as such Board.

Therefore, in view of the admitted fraud which operated to produce the nomination involved, the fact that the Canvassing Board had no ballots which it could legally count, and the further fact that both the relator and the members of the Board recognized the illegality of the ballots, but were under the mistake of law that the sole remedy was by a formal contest, and that the relator did, in fact, repeatedly call the court's attention to the illegality of the votes in question, and by reason of the liberality allowed in such proceedings as this to the end that fraud may be thwarted and elections made to serve their proper function, and that the relator has no remedy by contest, we decline to hold that the relator is barred of the relief sought by his failure to take more formal steps to protect his interests and to make a record of them before the Board of Canvassers.

Nor do we consider the relator to be barred of relief by lapse of time, although fifty-three days intervened between the conclusion of the recount and his application

for the writ of mandamus. Code, 3-5-41 authorizes this Court to coerce performance of their duties by election officials without fixing any time within which such remedy must be invoked. The provisions of this section of the Code clearly indicate a legislative policy that election controversies should be brought into this Court and ended with all reasonable speed. But what constitutes undue delay depends upon the circumstances of each case. Here the relator has proceeded promptly to challenge the action of the Canvassers, by a process which he considered his only remedy, and turned to the present course at once when he discovered his error. The situation of no person has been changed to disadvantage by this delay. There is still adequate time to correct the errors of the Board and to print and circulate the ballots. A great public wrong will be rectified with injury to none. The members of the Board of Canvassers having failed to do that which it was their mandatory duty to do, stand as having adjourned without completing their legal function, and may be required to reconvene and do that which they should have done. "Until they have performed their duties lawfully, in contemplation of law they have not performed them at all." *Pack* v. *Karnes,* 83 W. Va. 14, 97 S. E. 302; *State ex rel. Simon* v. *Heatherly, supra.*

The writ of mandamus will be awarded as prayed for.

*Writs awarded.*