STATE *ex rel.* BOB E. MYERS, *et al.*

*v.*

GEORGE L. GARNER, *et al. and* EARL E. STURM

(No. 12273)

Submitted October 1, 1963.    Decided November 5, 1963.

BROWNING, JUDGE, not participating.

*E. Henry Broh,* for relators.

*Maxwell W. Flesher,* for Garner et al.

*Robert L. Godbey,* for Sturm.

CAPLAN, JUDGE:

In this original proceeding in prohibition the petitioners Bob E. Myers and Harry Wolfe, Jr., citizens, duly registered voters and taxpayers of the City of Huntington, seek to prohibit the members of the City Council of the City of Huntington and Earl E. Sturm from proceeding with a certain proposed election contest. A rule was issued by this Court returnable on October 1, 1963 and the case was submitted at that time upon the pleadings, briefs and arguments of counsel.

On April 20, 1963 a special municipal election was held in the City of Huntington for the purpose of determining whether the voters of that city favored or were opposed to the adoption of a new charter. The canvass of the votes

cast at that election by the Council of the City of Huntington revealed that 11,331 voters favored the adoption of a new charter and 11,371 opposed its adoption. Thereafter, pursuant to the demands of the proponents and opponents of the new charter, a recount was held, whereupon it was determined that the result of the election was unchanged except for one additional vote by those who favored the adoption of the new charter. Accordingly, the council certified the result and, on July 22, 1963, entered its certificate to that effect in its minutes. Subsequently, Earl E. Sturm, a proponent of the new charter and demandant in the aforesaid recount proceedings, served notice upon the city council and Bob E. Myers that he desired to contest the result of this election before the Council of the City of Huntington. Bob E. Myers was an opponent of the adoption of the new city charter and was also a demandant in the recount proceedings.

Pursuant to the aforesaid notice, the city council, by resolution dated August 12, 1963, set September 10, 1963 as the date to hear the said election contest. On August 27, 1963 the petitioners herein filed their petition in this Court seeking to prohibit the requested contest proceedings. Upon the issuance of the rule by this Court further action was stayed pending the outcome of this proceeding.

The sole question raised here is whether the council of the City of Huntington has jurisdiction to hear and determine a contest of an election involving a public issue.

That the jurisdiction to conduct an election contest is afforded only through constitutional or statutory provisions has been succinctly stated by this Court in *Daugherty* v. *County Court of Lincoln County,* 127 W. Va. 35, 31 S. E. 2d 321, in the following language: "An election contest is purely a constitutional or statutory proceeding. The common law knew no such method of testing the validity of a nomination or election. 29 C.J.S., Elections, Section 246." See also *Staley* v. *County Court of Wayne County,* 137 W. Va. 431, 73 S. E. 2d 827.

If such election contest is proper in the instant case, statutory or constitutional authority must exist to permit it. The special municipal election of April 20, 1963 was

conducted under the provisions of Code, 1931, 8A-2, as amended, Section 20 of which provides: "* * * The governing body of a city shall canvass the returns at relatively the same time with reference to an election held hereunder and in the same manner as county courts are required to do with respect to general elections, and shall declare the result of the election. * * *". This gives the city council only such authority as specified therein, namely, the power to canvass the returns of the election and declare the result.

It is contended that the municipal council has the same authority in relation to election contests as the county court, and that by reason thereof the Huntington City Council is authorized by law to conduct a contest of this election. This contention would assume that the county court possesses the power to conduct an election contest concerning a public issue. An examination of the constitutional and statutory provisions pertaining to the authority of county courts to conduct election contests readily points out the fallacy of such assumption.

Article IV, Section 11 of the Constitution of West Virginia provides: "The Legislature shall prescribe the manner of conducting and making returns of elections, and of *determining contested elections;* * * *." (Emphasis supplied). Article VIII, Section 24 of our Constitution provides: "* * * They [county courts] shall, in all cases of contest, judge of the election, qualification and returns of their own members, and of all county and district officers, subject to such regulations, by appeal or otherwise, as may be prescribed by law. * * *".

The Legislature, in accordance with the above constitutional provisions, enacted laws providing for election contests. Code, 1931, 3-9. Section 1 thereunder reads: "In all cases of contested elections, the county court shall be the judge of the election, qualifications and returns of their own members, and of all county and district officers."

The procedure providing for the contest of elections specifically refers to the contest of the election "of another

to any county or district office, including judge of any criminal, intermediate, common pleas, or other inferior court, or any office that shall hereafter be created * * *." Code, 1931, 3-9-2. Both the substantive and procedural sections of the aforesaid Article 9, Contested Elections, refer only to the contest of the election of a person. No other statutory authorization exists. No jurisdiction, therefore, is conferred upon the county court to conduct an election contest relating to any other office or to a public issue. This is well illustrated in *Daugherty* v. *County Court of Lincoln County*, 127 W. Va. 35, 31 S. E. 2d 321, wherein Lucien W. Blankenship contested the nomination of Duncan W. Daugherty as the Republican candidate for Judge of the Sixth Judicial Circuit. Mr. Daugherty, in that proceeding, sought to prohibit the County Court of Lincoln County from proceeding with such contest. Relative to the jurisdiction of the county court to entertain such action, this Court said: "The county court, having no inherent or common law authority to conduct a contest for any kind of office and having no such authority conferred upon it by the Constitution or by statute to hear such contest, involving other than a county, district, or school district office, is, of course, barren of such power. Accordingly, the writ prayed for must issue." See also *Luther* v. *McClaren*, 87 W. Va. 133, 104 S. E. 294, which relates to the contest of the election of a state senator.

Turning now to the instant question, that is, the contest of an election concerning a public issue, there is no less need for constitutional or statutory sanction. If such jurisdiction is not thereby specifically conferred it does not exist. An examination of the Constitution and statutes of this State fails to reveal the grant of any such jurisdiction.

Respondent Sturm contends that the statutes and constitutional provisions referred to herein should be construed to permit a contest of election on a public issue. Otherwise, he complains, no remedy is available to prevent "abuse of the elective franchise". It is elementary in the rules of statutory construction that where the language of a statute is free from ambiguity, its plain mean-

ing is to be accepted without resort to interpretation. We are of the opinion that the statutes involved herein are clear and free from ambiguity. They provide a manner of contesting the election of certain specified officers and nothing more.

That no manner has been provided to contest an election relating to a public issue can not be remedied by this Court. This is a matter for legislative action and any such omission by the Legislature can not be supplied by the Court. *Luther* v. *McClaren*, 87 W. Va. 133, 104 S. E. 294.

The statutory provisions under which this election was conducted gave the Council of the City of Huntington the authority to canvass the returns and declare the result of the election in the same manner as that provided for county courts in relation to general elections. Even if this statute were construed to afford to the governing body of a municipality the same authority to conduct an election contest as that granted county courts, such body could have no power in excess of that possessed by county courts. As herein related, the Legislature has conferred upon county courts the jurisdiction to hear contests of election only of their own members and county and district officers. No jurisdiction is granted to hear election contests on public issues and none exists in the city council.

A further consideration exists for requiring constitutional or statutory authority to conduct election contests relating to a public question. Upon whom does the contestant serve notice of contest? If he is to arbitrarily serve such notice on anyone who has been active on the opposite side, the latter party may choose not to defend in the contest and the minority may prevail through default. "The right to contest an election is purely statutory, and, in elections on public questions, in the absence of a statute, there would be no one against whom a contest proceeding could be instituted." 6 M.J., Elections, Section 84; *Cundiff* v. *Jeter*, 172 Va. 470, 2 S. E. 2d 436. This readily points out the need for legislative action,

wherein the procedure for such contest would be provided.

There being no such constitutional or statutory authority, we are of the firm opinion, and so hold, that the Council of the City of Huntington is without jurisdiction to conduct a contest of the charter election held on April 20, 1963.

For the reasons stated herein, the writ of prohibition is awarded.

*Writ awarded.*