ALVIE QUALLS

*v.*

ROBERT L. BAILEY, SR.

(No. 12772)

Submitted October 22, 1968.    Decided October 25, 1968.

*Robert L. Godbey,* for plaintiff in error.

*Greene, Ketchum, Baker & Pauley, Lawrence L. Pauley,* for defendant in error.

BROWNING, JUDGE:

At the primary election held in Cabell County on May 14, 1968, Andrew J. Kitchen, Robert L. Bailey, Sr., Alvie Qualls and E. W. Pullen were candidates for nomination for the office of justice of the peace in Kyle District. Two of the four were to be nominated, and Kitchen and Bailey appeared to be the winners as shown upon the face of the returns. Upon a canvass of the returns, and after a recount as demanded by both Qualls and Bailey, the results were

announced by the board of canvassers on June 25, 1968, showing Kitchen to have received the most votes, Bailey, 1,357 votes, and Qualls, 1,292 votes.

On June 27, 1968, Qualls, the appellee in this Court, served his notice of contest upon the appellant Bailey contesting the legality of Bailey's nomination on the grounds that Bailey's son, who served as an election official in Precinct 15 in Kyle District, was ineligible for appointment as such official and had performed unlawful acts in the course of such service. The legality of some 106 votes, as evidenced by poll slips, was also contested on grounds that the named voters did not reside at the addresses given and/or that the signatures on the poll slips varied from the signatures appearing on the permanent registration records and appellee moved that the entire vote cast in the democratic primary in Precinct 15 for the office of justice of the peace in Kyle District be declared invalid and disallowed. Bailey demurred to Qualls' notice of contest and filed a notice of contest in his own behalf against Qualls setting forth grounds not material here. Also, certain actions were filed with the Circuit Court of Cabell County and proceedings had thereon which are not pertinent to the factual situation on this appeal. Bailey's demurrer and a subsequent motion for a bill of particulars were overruled by the county court and the court convened to hear the election contest on July 22, 1968. Evidence in behalf of Qualls was taken on July 22, 23, 29 and 30, at which time he rested his case and Bailey moved for a directed verdict in his favor which was overruled. Five witnesses in behalf of Bailey were examined on August 1, 1968, at which time the hearing was adjourned until August 5, 1968, and witnesses were heard in behalf of Bailey, and in behalf of Qualls in rebuttal, on August 5, 6 and 8, 1968. It is noted in the record that Commissioner Dunfee, a member of the county court, was not present at the sessions on August 5, 6 and 8. At the conclusion of the testimony on August 8, both parties made the appropriate motions for relief in their behalf which were overruled. Bailey also moved the court, only two commissioners being present, for an immediate decision of the contest, which motion was refused. On September 3, 1968, in a 2-1 decision,

Commissioner Dunfee participating, the court ordered all votes in Precinct 15 for both appellant and appellee disallowed and on the basis of returns from other precincts declared Qualls the nominee. A motion to reconsider was overruled on September 10, 1968, by a 1-1 decision, Commissioner Black being absent.

Bailey applied for a writ of error to the Circuit Court of Cabell County, which writ was granted and the decision of the county court affirmed by separate orders entered on October 7, 1968. On application of Bailey this Court granted a writ of error and supersedeas on October 15, 1968, and set the matter for hearing on October 22, 1968, at which time the case was argued and submitted. Prior to argument, Qualls, by counsel, moved to dismiss the appeal as improvidently awarded on the grounds: (1) the sole assignment of error as to the circuit court's ruling asserts that the circuit court refused a writ of error whereas it is apparent on the face of the petition that such writ was granted; (2) the order of the circuit court affirming the county court's decision was prepared by appellant's counsel without notice to appellee or his counsel and, therefore, is tantamount to judgment by consent; (3) the entry of such orders constitutes invited error; and (4) local rules were violated with respect to the entry of such orders.

In view of our opinion as to the law controlling the disposition of this proceeding, it is unnecessary to relate the evidence adduced before the county court or to discuss the various errors allegedly committed by the county court. However, for an indication of the evidence required to invalidate the entire vote cast in a precinct, see *Williamson v. Musick*, 60 W. Va. 59, 53 S. E. 706, and *Hatfield v. Scaggs*, 101 W. Va. 425, 133 S. E. 109. We also deem it unnecessary to discuss the questions raised by the motion to dismiss.

Code, 3-7-7, as amended, provides in part as follows:

> "The county court shall hear and decide election contests initiated pursuant to the provisions of the preceding section. . . . At the trial of such contest, the court shall hear all such legal and proper evidence that may be brought before it by either party, and may, if deemed necessary, require the produc-

tion of the poll books, certificates and ballots deposited with its clerk, and examine the same. The hearing may be continued by the court from time to time, if it be shown that justice and right require it, but not beyond three months from the day of election. At the final trial of such contest the court shall declare the true result of such election, and cause the same to be entered on the records of the court. . . . Either the contestant or contestee shall have the right of appeal to the circuit court of the county from the final order or decision of the county court in such proceeding, . . . From the decision of the circuit court, an appeal shall lie to the supreme court of appeals, as in other cases, . . ."

Code, 3-5-20, as amended, provides in part:

"Any candidate for nomination . . . may contest the primary election before the county court of the county in which any primary election procedures, practices or results may be in issue. The procedure in such case shall be the same as that governing the contest of a general election by candidates for county offices or offices in magisterial districts. The decision of the county court upon such contest may be reviewed by the circuit court of the county and by the supreme court of appeals of the State. . . .

" . . .

"Any such contest, or petition for review, of a candidate for a nomination not finally determined within ten days next preceding the date of the next election after the primary, or of a candidate for delegate to any convention within ten days next preceding the date fixed for holding the convention, shall stand dismissed, and the person shown by the face of the returns of the primary election to be nominated for any office shall be entitled to have his name printed upon the regular ballot to be voted at the election, and the person shown upon the face of the returns to have been elected as a delegate to any convention shall be entitled to sit in such convention as a delegate."

Article VIII, Section 24 of the Constitution of West Virginia, entitled Powers of County Courts, provides insofar as pertinent that "They [county courts] shall, in all cases of contest, judge of the election, qualification and returns of their own members, and of all county and district

officers, subject to such regulations, by appeal or otherwise, as may be prescribed by law." The office of justice of the peace is a district office and this Court held in *Baer* v. *Gore,* 79 W. Va. 50, 90 S. E. 530, that under the pertinent statutory provisions, now Code, 3-7-7, as amended, an appeal to the circuit court would lie to a ruling of the county court between two contestants for the nomination for the office of justice of the peace and that an appeal from the circuit court's ruling would lie to this Court. Chapter 3 of the Code of West Virginia contains the law governing elections in this state. The first paragraph of Article 1, Section 2 of that chapter provides, in part, that "Unless restricted by the context, the provisions of this chapter shall apply to every general, primary, and special election in which candidates are nominated or elected. . . ." Article 7 is entitled Contested Elections. Section 7 of that article has been a part of the law of this state since its formation although it has, of course, been amended on several occasions. That section, as heretofore set out, after providing that the county court shall hear and decide election contests and detailing the procedure therefor, contains these two sentences: "The hearing may be continued by the court from time to time, if it be shown that justice and right require it, but not beyond three months from the day of election. At the final trial of such contest the court shall declare the true result of such election, and cause the same to be entered on the records of the court." Apparently the first case in which that language was discussed in an opinion of this Court was *Stafford* v. *County Court,* 58 W. Va. 88, 51 S. E. 2. Judge Brannon, with reference to the force of the three months limitation, said: "Though it is not involved in this case, is not that provision forbidding a continuance beyond three months only directory? True, the language is prohibitory in saying that the case shall not be continued beyond three months; but I doubt gravely whether non-compliance with it would work a discontinuance of the case. I should hesitate long before so holding." That statement was in at least one later decision of this Court dismissed as being *obiter dictum.* This is the single syllabus point in *Nelson* v. *Nash,* 126 W. Va. 568, 29 S. E. 2d 253, a general

election contest: "That part of Code, 3-9-3, [now 3-7-7] which prohibits a continuance of the hearing of an election contest beyond three months from the day of election, limits the jurisdiction of the county court; and an agreement between the contestant and the contestee that such continuance may be had neither extends nor restores the authority and power of the county court once they are lost by lapse of time."

Article 5 of Chapter 3 of the Code is entitled Primary Elections and Nominating Procedures. It is interesting to observe that the legislature of this state did not see fit to adopt legislation relating to primary elections until 1915. As heretofore stated the provisions of Code, 3-7-7, as amended, had been the law of this state from its formation. The provisions of Section 20 of Article 5 are vital to a determination of the controlling question before this Court in this case. This proceeding is a contest between two candidates of the same party for nomination to a district office of Cabell County. Section 20 is entitled Election Contests and Court Review. It begins thus: "Any candidate for nomination for or election to an office to be filled by the voters of the State or any political subdivision thereof or any candidate for membership on any political party executive committee, may contest the primary election before the county court of the county in which any primary election procedures, practices or results may be in issue. *The procedure in such case shall be the same as that governing the contest of a general election by candidates for county offices or offices in magisterial districts.*" (Italics supplied.)

The italicized language has heretofore been given full effect by this Court. In *Staley* v. *Wayne County Court,* 137 W. Va. 431, 73 S. E. 2d 827, involving a primary election contest, this Court held that Code, 3-9-2, as amended, [now Code, 3-7-6] providing that the contestant in an election contest must give the contestee ten days notice after the result of the election was declared is mandatory and that in the absence of the giving of such notice the county court was without jurisdiction to hear such contest. In the opinion in that case the Court quoted with approval the following language from the *Nash* case:

"The public policy of this State calls for diligent and timely action by officers, boards, tribunals and courts in ascertaining and declaring the final results of an election. Election boards may not adjourn until all the votes are counted, and a certificate of result made and signed. Code, 3-5-30. On the fifth day after election (Sundays excepted) the board of canvassers is required to convene to canvass the returns. Adjournments of such board may be made *'but no longer than is absolutely necessary'*. If a recount is desired, a demand therefor must be made before the result is officially declared. Code, 3-5-33; *Duty* v. *Thompson,* 79 W. Va. 415, 417, 91 S. E. 11; *Beacom* v. *Board of Canvassers,* 122 W. Va. 463, 10 S. E. 2d 793. A contestant is required to give notice of contest to the contestee within ten days after the last and binding declaration of result. Code, 3-9-2; *Stafford* v. *County Court,* 58 W. Va. 88, 51 S. E. 2. Notice of contest must be presented to the county court at its first regular term after delivery of such notice to contestee, and shall be placed on the docket of that court for hearing. Code, 3-9-3; *Stafford* v. *County Court, supra.* And finally, the hearing of an election contest 'may be continued from time to time . . . but not beyond three months from the day of election.' Code, 3-9-3.

"Evaluation of the foregoing statutes enacted in furtherance of the public policy above mentioned brings the legislative intent into bold relief: that an election result should be determined and declared with dispatch. The hearing and determination of an election contest is the last proceeding by which the object of the legislature is attained, and the statutory provision here considered is an overall limitation of the entire process of making returns of election, canvassing thereof, recounting the ballots cast, and contesting the result."

Also, in *Irons* v. *Fry,* 129 W. Va. 284, 40 S. E. 2d 340, a primary election contest in which the issue before this Court concerned the sufficiency of the notice of contest and the interrelationship between what is now Code, 3-5-20, and Code, 3-7-7, the Court stated: "So, we think that under the *Dryden* case and Code, 3-4-25 [now 3-5-20], which provides that the procedure in a contest for a nomination purported to have been made at a primary election 'shall be the same as that governing the contest of a general election

by candidates for county offices', the *Dryden* case is in point with the case at bar and contestant's notice is defective. . . ." The *Dryden* case referred to is *Dryden* v. *Swinburn,* 15 W. Va. 234, a general election contest.

Section 20 further provides that the decision of the county court upon such a contest may be reviewed by the circuit court of the county and by this Court. The section has no time limitation upon the time when such appeals may be effected. However, the general statutes governing appeals from a county court to a circuit court, Code, 58-3-4, and from a circuit court to this Court, Code, 58-5-4, would apply. See, *In Re: Boggs' Estate,* 135 W. Va. 288, 63 S. E. 2d 497.

It is apparent from the language of Code, 3-5-20, as amended, and Code, 3-7-7, as amended, that they must be read together in order to effectuate the purpose of the legislature as to contested elections. In other words, Code, 3-5-20 is not complete and not intended to be unless the provisions of Code, 3-7-7 are read with it. As heretofore stated Code, 3-5-20 specifically provides that the procedure under that section shall be the same as that governing the contests of general elections under Code, 3-7-7. The following provision of Code, 3-5-20 is, for reasons apparent in its language, applicable only to a contest arising out of the results of a primary election: "Any such contest, or petition for review, of a candidate for a nomination not finally determined within ten days next preceding the date of the next election after the primary, or of a candidate for delegate to any convention within ten days next preceding the date fixed for holding the convention, shall stand dismissed, and the person shown by the face of the returns of the primary election to be nominated for any office shall be entitled to have his name printed upon the regular ballot to be voted at the election, and the person shown upon the face of the returns to have been elected as a delegate to any convention shall be entitled to sit in such convention as a delegate." The urgency for disposing of a contest after a general election is not as compelling for the reason that the incumbent will hold over until his successor receives a certificate of election and otherwise qualifies for the office.

Not so of a contest following a primary election. There must be a determination of the winner in every such election within such time as he may be placed upon the general election ballot. It was for that reason that the last quoted provisions of Code, 3-5-20, as amended, were adopted. Those provisions are not an exclusion of the three months period contained in Code, 3-7-7, as amended, but were a further limitation upon the county court, the circuit court, and this Court with regard to the time when, regardless of the circumstances then obtaining, there must be a finality of the proceedings. That section does not provide one rule as to time element for the determination of a contest following a primary election whereas a different rule is applicable under Code, 3-7-7. The three months rule under Code, 3-7-7 is applicable to primary elections as well as general elections. In addition to that limitation there is the further limitation in Code, 3-5-20, applicable to primary elections for obvious reasons as heretofore stated, and they apply not only to candidates for nomination in the primary election for the usual county and district offices but they apply also to the candidates to a political convention. To be succinct, under Code, 3-5-20, if there is not a determination of a primary election contest, either by the county court, the circuit court upon appeal, or by this Court upon appeal from the circuit court, within ten days next preceding the date fixed for the holding of the general election, the litigation is at an end, the contest stands dismissed, and the candidate who upon the face of the returns of the primary election received the most votes will be certified to the clerk of the circuit court as the nominee of his party for that office.

In the recent case of *State ex rel. Palumbo* v. *County Court,* 151 W. Va. 61, 150 S. E. 2d 887, this Court had before it for determination primarily the question of interpreting the following sentence of Code, 3-7-7, as amended: "The notice of contest shall be presented to the county court at its first term after the same is delivered to the person whose election is contested, and the same shall be docketed for trial in such court." The County Court of Kanawha County had refused a hearing pursuant to the notice of contest at the term of court during which the notice was given upon

the belief that the phrase, "first term after", meant the following term and not the term then in session. This Court, in a 4-1 decision, held otherwise and directed the county court to hear the contests at that term of court. The decision is now the law upon that question and this Court now has no criticism of it as it relates to the issue then before it. However, the majority opinion contains the following language: "It will be noted that at the time the request for the contest was made in this case the county court refused to hold hearings of the contest and set them to be heard at the next regular term beginning October 1, 1966, which would have been more than three months after the primary election, a time that they contend they have no jurisdiction to hear them. The three months period provided for in Code, 3-7-7, as amended, applies only to hearing procedure, and the time element applicable to determining of contests in primary elections is governed by Code, 3-5-20, as amended, which reads as follows: '*Any such contest, or petition for review, of a candidate for a nomination not finally determined within ten days next preceding the date of the next election after the primary . . . shall stand dismissed, . . .*' (Emphasis supplied.) " This is the first syllabus point in the *Palumbo* case: "The wording of the statute with regard to the three months period contained in Code, 3-7-7, as amended, beyond which an election contest is not to be prolonged, refers or pertains only to continuances of hearings from time to time in election contest cases in order to require such hearings to be completed as soon as possible after the date of the election." Insofar as, and only insofar as, the holding in that case is in conflict with the decision in the instant case it is disapproved.

For the reasons heretofore stated, under the applicable provisions of Code, 3-7-7, as amended, we find that the County Court of Cabell County was without jurisdiction to enter its order of September 3, 1968, inasmuch as more than three months had elapsed since the date of the primary election out of which this contest arose. The judgment of the Circuit Court of Cabell County is reversed and that court is directed to reverse the order of the County Court

of Cabell County disallowing the votes for the democratic candidates for justice of the peace cast in Precinct 15 in Kyle District and declaring Qualls one of the nominees of the democratic party of that district for office of justice of the peace, with the further direction that Robert Bailey, Sr., be declared one of the democratic nominees for the office of justice of the peace of Kyle District and that his name be certified to the Clerk of the Circuit Court of Cabell County so that that official may place his name upon the general election ballot to be voted upon at the next general election on November 5, 1968.

> *Reversed and remanded*
> *with directions.*

BERRY, PRESIDENT, dissenting:

I dissent from the majority opinion wherein it now holds that the provisions of Code 3-7-7, as amended, limits the jurisdiction of the county court to hear and determine primary election contests to a three months period from the date of the election and disapproves the unanimous holding of this Court on this same question just two years ago in the case of *State ex rel. Palumbo and Loop* v. *County Court*, 151 W. Va. 61, 150 S. E. 2d 887.

When the *Palumbo* case was argued in this Court in September, 1966, the attorney for the respondents contended this Court did not have jurisdiction to hear or decide the case for the reason that more than three months had elapsed since the primary election. It was necessary to dispose of this question before the question of when the case should be docketed for trial in the county court could be taken up, because this Court would not have jurisdiction to determine that question if the three months period prohibited the county court from hearing the case. This is made abundantly clear in the *Palumbo* case wherein it is stated in the unanimous opinion of the Court that:

> "It also appears to be the contention of the respondents that inasmuch as three months have elapsed from the day of the election, which was May 10, 1966, the county court has no jurisdiction to hear the contest. This is based on the provisions

in Code 3-7-7, as amended, dealing with continuances by the county court of the hearing in a general election contest which reads in part as follows: 'The hearing may be continued by the court from time to time, if it be shown that justice and right require it, but not beyond three months from the day of the election.'

"It will be noted that at the time the request for the contest was made in this case the county court refused to hold hearings of the contest and set them to be heard at the next regular term beginning October 1, 1966, *which would have been more than three months after the primary election, a time that they contend they have no jurisdiction to hear them.* The three months period provided for in Code 3-7-7, as amended, applies only to hearing procedure, and the time element applicable to determining of contests in primary elections is governed by Code 3-5-20, as amended, which reads as follows: *'Any such contest, or petition for review, of a candidate for a nomination not finally determined within ten days next preceding the date of the next election after the primary * * * shall stand dismissed, * * *.'* " [Emphasis supplied.]

Chapter 3 of the Code of West Virginia which was generally amended in 1963 deals with elections in this State. All of the provisions of this Chapter apply to all elections whether they be general, primary, or special elections unless certain provisions of the various sections are restricted by the context. This is clearly set out at the beginning of the chapter wherein it is stated in Code 3-1-2, as amended, that: *"Unless restricted by the context,* the provisions of this chapter shall apply to every general, primary, and special election in which candidates are nominated or elected * * *." [Emphasis supplied.] The provisions of Code 3-7-7, as amended, provide that: "* * * The hearing may be continued by the court from time to time, if it be shown that justice and right require it, but not beyond three months from the day of election * * *". This provision has been in the Code since 1863 and, of course, only applied to election contest before the county court in general elections until 1915 when this state had primary elections at which time Code 3-5-20, as amended, was enacted for election con-

tests for primary elections and it provided that: "Any such contest, * * * of a candidate for a nomination not finally determined within ten days next preceding the date of the next election after the primary * * * shall stand dismissed * * *."

There was no procedure at common law for election contests and such contests must be governed as to the specific provisions as contained in either the constitution or statute. *State ex rel. Daugherty* v. *Lincoln County Court*, 127 W. Va. 35, 31 S. E. 2d 321; *State ex rel. Myers* v. *Garner*, 148 W. Va. 92, 133 S. E. 2d 82. Certainly the context of Code 3-5-20, as amended, clearly restricts the context of Code 3-7-7, as amended, as far as primary election contests are concerned. The wording of these sections as to the time limit for hearings is entirely different. The section specifically applying to contests of primary elections fixes a different time limit for primary election contests to be determined in the same manner that procedure for election contests for state offices are different from contests for county offices. Code 3-7-1, as amended. Code 3-7-3, as amended, provides for election contests before a special court for secretary of state, auditor, treasurer, attorney general, commissioner of agriculture, judges of the Supreme Court of Appeals, and judges of a circuit court. All of the sections in Chapter 3 apply to both primary and general elections unless there is some difference between the procedure in a primary and general election. Code 3-1-2, as amended. It will be noted that the election contests for certain state offices are not governed by the provisions in Codes 3-7-6 and 7, as amended. The provisions of these sections do not apply to such contested elections and the continuance beyond three months is not applicable in the contest of these cases, as well as in the primary election contest before a county court. See *State ex rel. Daugherty* v. *Lincoln County Court*, 127 W. Va. 35, 31 S. E. 2d 321.

It is true that considerable confusion with regard to the provisions relating to the time limit for contested elections, both primary and general, has existed by virtue of the decisions of this Court over a period of years and in an attempt to reconcile the cases the following statement was placed in the *Palumbo* case: "Due to the fact that confusion

has arisen in connection with election contest cases, any statement that may be contained in any of the prior decided cases of this Court dealing with such matters not consistent with the decision of this case in connection therewith is disapproved." It was also stated in the *Palumbo* case that: "Code, 3-5-20, as amended, provides that contests as the result of primary elections for state offices or offices in political subdivisions of the state shall be conducted under the same procedure as provided for contests in a general election involving county offices. This provision, of course, is only applicable to the procedure where appropriate." It was further stated in the *Palumbo* case: "It would be senseless to say that the county court did not have jurisdiction to hear a contested election case three months after the date of the primary election when the statute dealing with primary elections specifically gives the county court and appellate courts jurisdiction to finally determine such contested elections up until '* * * within ten days next preceding the date of the next election after the primary * * *'. Therefore, the wording of the statute with regard to the three months period clearly refers or pertains only to the continuances of hearings in election contest cases in order to require such election contest cases to be completed as soon as possible after the date of the election."

The provisions in Code 3-7-7, as amended, deal with continuances of the hearing from time to time and no doubt it was originally intended to refer to continuances for a period of time, such as a week or two, in order to have contested elections disposed of with dispatch.

I agree with the statement of Judge Brannon in the case of *Stafford* v. *Mingo County Court,* 58 W. Va. 88, 51 S. E. 2, which was apparently the first case in which this matter was discussed, and although it is dicta he questioned whether or not the provisions in question forbid a continuance beyond three months. The present decision of this Court, and some former cases prohibit the completion of a contest hearing even if the three months period had elapsed if the parties were in the middle of the taking of evidence and the case had never been continued.

The majority opinion in the case at bar would in effect prohibit election contests in counties such as Kanawha with the present ballot in use because it appears from the *Palumbo* case that election contests could not be completed within three months from the primary election. The primary election in that case was held on May 10, 1966, and the canvass and recount were not completed until July 20, 1966, about two months and ten days after the primary and notices of contest, as provided by the statute, had to be given and were not returned to the county court until August 1, 1966. Rules were issued by this Court on August 13, 1966, as prayed for in the petition which was over three months after the primary election and the case was not submitted for decision until September 7, 1966. It is therefore clear in the *Palumbo* case that under the ruling of the case at bar this Court would not have had jurisdiction to hear that case and although jurisdiction of the Court was specifically questioned by the attorney for the respondents this Court could even have raised the question on its own motion and need never have decided the other point presented in the case and the hearing would have never taken place in the county court of Kanawha County subjecting the parties to unnecessary expense. *Grottendick* v. *Webber,* 134 W. Va. 798, 61 S. E. 2d 854; *Montgomery* v. *Montgomery,* 147 W. Va. 449, 128 S. E. 2d 480; *Lester* v. *Rose,* 147 W. Va. 575, 130 S. E. 2d 80.

For the reasons stated in this dissenting opinion, I do not think that syllabus point one of the *Palumbo* case and the part of the opinion pertaining thereto should have been overruled.