367 S.E.2d 763

## CROSS LANES/TYLER MOUNTAIN COMMUNITY ASSOCIATION, et al.

v.

## Don Joe HUNT, et al.

### No. 18222.

Supreme Court of Appeals of West Virginia.

March 31, 1988.

Steven L. Miller, Cross Lanes, for Cross Lanes/Tyler Mountain Community Assoc.

Gary A. King, County Atty. Kanawha County Com'n, Charleston, for Hunt, et al.

William E. Adams, Jr., Larry A. Winter, Spilman, Thomas, Battle Klostermeyer, Charleston, for respondent/intervenor.

NEELY, Justice:

A petition to incorporate Cross Lanes—an unincorporated suburban area in Kanawha County—was filed in the Kanawha County Commission on 20 August 1987. Pursuant to the petition, the county commission ordered that a special election by paper ballot be held on 10 November 1987 to determine whether Cross Lanes should become an incorporated municipality within the county. Immediately after the vote, the unofficial tabulation indicated that incorporation was defeated.

Numerous objections were raised to the integrity of the election and the county commission, sitting as a board of canvassers, heard complaints that some envelopes containing ballots had defective seals. They also heard allegations that a large, plastic envelope containing smaller, defectively sealed envelopes had a broken zipper and that the ballots were delivered from one precinct by a single poll worker rather than by two poll workers with opposite views on the election issue. The county commission took evidence on these matters but concluded that none of the alleged irregularities effected the election's outcome.

On 19 November 1987 the county commission declared that the incorporation issue was defeated by a margin of 82 votes and that formal certification of the election would occur on the same day. However, before the certification, petitioners demanded a recount. A recount was conducted on 23 November 1987 but neither the petitioners nor any of their representatives attended the recount. As a result of the recount the number of votes against incorporation was reduced by one, which still left a margin of 81 negative votes. The commission again declared the results and set 12:30 p.m., 25 November 1987 as the time for formal certification.

Petitioners filed a civil action in the Circuit Court of Kanawha County the day before certification was scheduled praying that the county commission be enjoined from certifying the election results and that the results of the election be set aside. In support of their complaint, petitioners alleged that if the circuit court refused to enjoin the county commission from certifying the election they would suffer irreparable harm. Petitioners alleged that material

irregularities occurred in the election process, including unlawful electioneering by poll workers, attempted voting by persons not authorized to vote who thereby discouraged eligible voters from going to vote, and ballot tampering.

The respondents filed a motion to dismiss on the grounds that the circuit court did not have jurisdiction to conduct an election contest or nullify an election involving a public question. After considering the briefs and arguments of counsel, the circuit court concluded that it had no jurisdiction to conduct an election contest when the election involved a public question and granted the respondents' motion to dismiss.

The county commission certified the election results on 22 December 1987 and on 5 January 1988 the petitioners filed a "petition for a writ of certiorari, mandamus, prohibition, and supersedeas" here. We granted a rule to show cause to determine whether a circuit court has jurisdiction to review, by injunction, mandamus or otherwise, the actions of a county commission in conducting a public question election. We conclude that a circuit court does not have such jurisdiction and decline to disturb the judgment of the Circuit Court of Kanawha County.

# I

■ The petitioners direct us to the language of *W.Va.Code*, 3-1-2 [1971] where, under the subheading "definitions," the *Code* says:

Unless restricted by the context, the provisions of this chapter shall apply to every general, primary and special election in which candidates are nominated or elected or in which voters pass upon any public question submitted to them, except that the provisions hereof shall be construed to be operative in municipal elections only in those instances in which they are made expressly so applicable.

By virtue of this general language, the petitioners assert that a circuit court is authorized to apply the general provisions of *W.Va.Code*, 3-7-6 [1963] and 3-7-7 [1963] concerning contested elections. Specifically, petitioners assert that *Code*, 3-7-7 [1963] allows a circuit court to hear an appeal from an election contest conducted by a county commission under *Code*, 3-7-6 [1963] upon the application of an aggrieved party. The problem with this argument is that the appeal authorized in *Code*, 3-7-7 [1963] is *expressly limited* to election contests brought under *Code*, 3-7-6 [1963].

*W.Va.Code*, 3-7-6 [1963] is titled "County and district contests; notices; time," and is specifically limited to elections for county and district offices.[1] *Code*, 3-7-7 [1963], concerning election contests before the county commissions and subsequent judicial review, is expressly limited to contests initiated under *Code*, 3-7-6 [1963]. Thus the statute, namely *Code*, 3-7-7 [1963], under which the petitioners would have had the circuit court exercise jurisdiction in the Cross Lanes election case is specifically "restricted by the context" of

1. *W.Va.Code*, 3-7-6 [1963] provides, in its entirety, as follows:

In all cases of contested elections, the county court [county commission] shall be the judge of the election, qualifications and returns of their own members, and of all county and district officers.

A person intending to contest the elction of another to any county or district office, including judge of any criminal, intermediate, common pleas, or other inferior court, or any office that shall hereafter be created to be filled by the voters of the county or of any magisterial or other district therein, shall, within ten days after the result of the election is declared, give the contestee notice in writing of such intention, and a list of the votes he will dispute, with the objections to each, and of the votes rejected for which he will contend. If the contestant object

to the legality of the election, or the qualification of the person returned as elected, the notice shall set forth the facts on which such objection is founded. The person whose election is so contested shall, within ten days after receiving such notice, deliver to the contestant a like list of the votes he will dispute, with the objections to each, and of the rejected votes for which he will contend; and, if he has any objection to the qualification of the contestant, he shall specify in writing the facts on which the objection is founded. Each party shall append to his notice an affidavit that he verily believes the matters and things set forth to be true. If new facts be discovered by either party after he has given notice as aforesaid, he may, within ten days after such discovery, give an additional notice to his adversary, with the specifications and affidavit prescribed in this section.

*Code,* 3–7–6 [1963] to election contests involving county and district elected *officials.* *Code,* 3–7–7 [1963] does not apply to public question elections. The public question election at issue in this case is governed by *W.Va.Code,* 8–2–7 [1969], which provides no mechanism for an election contest in either the county commission or the circuit court.[2]

## II

The reason for the omission of contest procedures in public question elections is made clear by this Court's comments in *Myers v. Garner,* 148 W.Va. 92, 133 S.E.2d 82 (1963) where we said:

A further consideration exists for requiring constitutional or statutory authority to conduct election contests relating to a public question. Upon whom does the contestant serve notice of contest? If he is to arbitrarily serve such notice on anyone who has been active on the opposite side, the latter party may choose not to defend in the contest and the minority may prevail through default.

148 W.Va. at 96, 133 S.E.2d 82.

The issue before us today is not one of first impression; it is squarely governed by *Myers v. Garner, supra,* where we said:

That the jurisdiction to conduct an election contest is afforded only through constitutional or statutory provisions has been succinctly stated by this Court in *Daugherty v. County Court of Lincoln County,* 127 W.Va. 35, 31 S.E.2d 321, in the following language: "An election contest is purely a constitutional or statutory proceeding. The common law knew no such method of testing the validity of a nomination or election." (citations omitted).

148 W.Va. at 93, 133 S.E.2d 82.

■ In *Myers v. Garner, supra,* citizens sought a writ of prohibition in this Court to prohibit the City of Huntington from conducting an election contest concerning ratification of a new city charter. The sole syllabus point in *Myers* said:

2. *W.Va.Code,* 8–2–7 [1965] provides as follows:

If the proceeding be for the incorporation of a city, and it appears to the county court [county commission], upon the returns being canvassed, that a majority of the legal votes cast on the question of incorporation were in favor of such incorporation and the court [commission] is satisfied that all of the applicable provisions of this article have been complied with, the court [commission] shall by order duly made and entered of record declare that the territory in question (reciting the boundaries) shall thereby become a body corporate, and shall thenceforth be known as the city of....., but that until a charter shall be framed and adopted as provided in article three [§ 8–3–1 et seq.] of this chapter, such city shall have and exercise no powers of a municipality except the power to frame and adopt a charter as therein provided.

If the proceeding be for the incorporation of a town or village, and it appears to the county court [county commission], upon the returns being canvassed, that a majority of the legal votes cast on the question of incorporation are in favor of such incorporation and the court [commission] is satisfied that all of the applicable provisions of this article have been complied with, the court [commission] shall by order duly made and entered of record, direct the clerk of said court [commission] to issue a certificate of incorporation in form or in substance as follows:

"It appearing to the court [commission] that under the provisions of article two [§ 8–2–1 et seq.], chapter eight of the Code of West Virginia,

as amended, at an election duly held on the ........ day of .........., 19...., a majority of the legal votes cast on the question of incorporation by the qualified voters of the following territory, to wit: Beginning, etc. (here recite the boundaries), were cast in favor of the incorporation of the town or village of .........., in the County of .........., bounded as herein set forth; and it appearing to the satisfaction of the court [commission] that all of the provisions of article two, chapter eight of the Code of West Virginia, as amended, have been complied with by the petitioners for said incorporation, said town or village is hereby declared to be a body corporate, duly authorized to exercise all of the corporate powers conferred upon towns or villages by chapter eight [§ 8–1–1 et seq.] of the Code of West Virginia, as amended, from and after the date of this certificate. (Signed) ............, Clerk County Court [County Commission]." Thereupon, the first election of officers shall be held as provided in sections two, three and four [§§ 8–5–2, 8–5–3 and 8–5–4], article five of this chapter.

If on the returns being canvassed on the question of incorporation, a majority of the legal votes cast be against incorporation, the proceeding shall be dismissed, and no subsequent proceeding for incorporation of the same territory or any portion thereof shall be considered or election thereon had within a period of three years thereafter.

In the absence of expressed constitutional or statutory authority permitting a municipal council to determine contested elections relating to a public issue, the council is without jurisdiction to hear and determine such contest.

With regard to whether the general election law contained in Chapter 3 of the *W.Va.Code* establishes, by implication, a procedure to contest elections relating to public questions, this Court said in *Myers:*

That no manner has been provided to contest an election relating to a public issue cannot be remedied by this Court. This is a matter for legislative action and any such omission by the Legislature cannot be supplied by the Court. (citations omitted).

148 W.Va. at 96, 133 S.E.2d 82.

Accordingly, for the reasons set forth above, the writs of certiorari, mandamus, and prohibition for which the petitioners pray are denied.

Writs denied.