# CHARLESTON.

## STAFFORD v. BOARD OF CANVASSERS.

Submitted December 15, 1904. Decided December 20, 1904.

:1.  ELECTION—*Ballot—Board of Canvassers.*
  When the clerk of a county court has laid before the board of
  canvassers of the county, for the purposes of a recount, the
  ballots, poll books and other returns of the election, and, with-

out just cause, has refused to receive back into his custody the ballots and care for them during the recesses of the board, while engaged in the recount, such board may lawfully commit the care and custody of the ballots to the sheriff of the county. (p. 672).

2.  ELECTION—*Ballot.*

  . Retention of one or both of the keys to the ballot boxes, although the ballots are in the boxes, by the board of canvassers or a member thereof, does not justify the refusal of the clerk to preserve and be responsible for the ballots.  (p. 673). ·

3.  ELECTION—*Recount—Ballots Tampered With.*

  When all the ballots cast at all the precincts in an election held in the county have been kept in proper custody, and the packages of ballots voted at one of the precincts nevertheless bears evidence of having been tampered with, that fact does not vitiate the ballots cast at the other precincts.    (pp. 673, 674).

Petition of John L. Stafford for a writ of *mandamus* to the board of canvassers of Mingo county.

*Writ denied.*

JOHN H. HOLT, GEO. J. McCOMAS and S. D. STOKES, for petitioner.

MOLLOHAN, McCLINTIC & MATHEWS, JOHN A. SHEPPARD and S. U. G. RHODES, for respondents.

POFFENBARGER, PRESIDENT:

John L. Stafford, who was a candidate on the Democratic ticket for the office of prosecuting attorney of Mingo county, at the election held in that county in November, last, asks for a writ of *mandamus* to compel the board of canvassers of that county to reject all the ballots cast at said election in said county, and declare the result of the election between himself and his competitor, John A. Sheppard, the candidate for the same office on the Republican ticket, from the returns as certified by the precinct election officers, on the ground that all of said ballots are discredited and vitiated as evidence, because of their having been in improper and illegal custody for several days, while the recount in said election was pending.  Simultaneously with this application, like petitions, based on the same ground, were filed by the Democratic candidates for sheriff, house of delegates, assessor, commissioner of the county court for short term and commissioner of the county court for full term.

The facts are as follows: After the board of canvassers had canvassed the returns of the election of the county and declared the result as ascertained by them from the face of the returns,. the Republican candidates demanded a recount as to nine precincts specified by them. After having gone through the nine precincts and counted all of the undisputed ballots, without entering the result upon the record, but having their tellers make memoranda of the results of such counting, and laid aside for future action all the disputed ballots, the board of canvassers was asked by the republican candidates to recount all the other precincts of the county. Thereupon the clerk of the court, in whose custody the ballots and other returns were, was required to produce them to the court. Though not required by law to be kept in the ballot boxes, the ballots of each precinct were in the ballot box used thereat, and locked up therein, each box having two locks and a separate key for each. Upon taking a recess, for some purpose, the board retained one or both of the keys to each of the ballot boxes, and directed the clerk to take charge of the ballots and boxes and keep them in his custody until the re-assembling of the board, and during other recesses while the recount was pending. Because of the retention of the keys by the board, he declined to accept and take care of the ballots. Thereupon the board directed the sheriff of the county to guard and take care of the ballots and ballot boxes in the court room. There is some conflict between the petition and the return as to the circumstances which led up to this final action on the part of the board, but there is no substantial difference as to the ground upon which the clerk attempts to justify his act nor as to the ground upon which the board relies for justification, in requiring the sheriff to guard the ballots. The petition alleges the retention of the keys, but the return denies it. All the ballots cast at all the precincts in the county remained in the court room, guarded by the sheriff, except as hereinafter stated, from the 18th day of November until the 25th day of November. At such times as the sheriff was compelled to absent himself for meals or other necessary purposes he left another man of his selection in charge of the ballots. At times while the ballots were so in the court room under the care of the sheriff, persons having business with the sheriff went in there and transacted the same with him, just as people would

have gone into the clerk's office and transacted business with the clerk, and the sheriff and his assistant both swear that nobody was permitted to examine, or in any way interfere with, the ballots or ballot boxes while they so remained in his custody.

The sole question upon which this application turns is whether, under the circumstances, these ballots were vitiated by reason of their custody by the sheriff. It is unnecessary to enter upon a discussion of the extent of the power of the board of canvassers in respect to the custody of the ballots, after they have been laid before them by the clerk. It is enough to say that, when the clerk of the county court refuses to take charge of the ballots and keep them during the recesses of the board, without just cause for such refusal, the law of necessity justifies the board in adopting some other means for the care and preservation of the ballots. The only matter relied upon by the clerk as justification for his refusal to take back and keep the ballots, is the alleged retention of the keys to the ballot boxes. That is not sufficient. The law does not require him to keep them in the ballot boxes, nor under lock in any particular kind of a box or drawer, but only in his office. For protection against tampering, the law relies upon the seal on the bags containing the ballots. For anything the law says to the contrary, the clerk may keep these sealed packages on shelves or in open drawers or boxes in his office. They had been, for convenience, placed in the ballot boxes and locked up. Upon taking them back into his custody from the board, as was his legal right and duty, he would have been justified in breaking open the boxes and taking the packages out of them and locking them up in other receptacles, if he deemed it necessary to do so for their preservation. Suppose some one would steal the keys to the boxes from the clerk, when he has placed the ballots in them for safe keeping. Would he be justified in casting them into the street or refusing to perform his duty respecting them in any other way?

The petition suggests that, as, in the further progress of the recount, and after the ballots, ballot boxes and keys had all been returned into the custody of the clerk, it was found that the packages of ballots of one of the precincts bore evidence of having been tampered with, there is conclusive evidence of exposure and tampering with the ballots, either while they were in

the custody of the sheriff or in the custody of the clerk, and that in either view of the matter, they must be discarded entirely, all of the ballots of all of the precincts, unless it is proper to overcome the presumption of viciousness by extrinsic evidence. There is no evidence that any of the ballots of any of the other precincts have been tampered with. If they are condemned it must be because of the inference arising from the fact that the packages of the one particular precinct disclose evidence of having been tampered with. We do not think this proposition tenable. Let us suppose that the ballots have been in indisputably proper custody all the time. Nevertheless, it appears that one precinct or package bears evidence of having been tampered with. Shall we say that this fact alone condemns all others, though such others bear no evidence of having been tampered with, and no evidence is offered tending to show that they have been violated? We know of no authority that goes so far. The books say that ballots are not to be rejected merely because there was possible opportunity to tamper with them, but that it must appear that they were probably tampered with. *Ellis* v. *Elkin,* 130 Mo. 90.

Two pleas in abatement, tendered by the respondents, set up the pendency of *mandamus* proceedings in a circuit court, instituted prior to these applications, for the purpose of compelling the board of canvassers to reject all ballots found by them in the progress of the recount, on which each of the poll clerks had not subscribed his name as required by the statute. No return was made to the alternative writs in those cases, and the board, being satisfied that they could not make sufficient returns to them, went on and rejected all ballots of that class. It is manifest that those proceedings are not for the same purposes as the writs applied for here. They were to compel the rejection of ballots of a certain class, while these applications are for writs to compel the rejection of all the ballots cast at all the precincts in the county for reasons other than those upon which the circuit court writs are founded. "To sustain the plea of a former suit pending it must appear that the subject matter and the relief sought in the second suit are the same as in the first suit." 1 Cyc. 27.

For reasons given, the writs sought in petition No. 1 are refused.                                          *Writ denied.*

Note by DENT, JUDGE:

Having been a candidate in the last election and pecuniarily interested in the result, I have concluded that it is improper for me to take part in the decision of any contest arising under it if avoidable.

It is true, the people have removed my disqualification in part, but

"You may break, you may shatter the vase if you will,
The scent of the rose will cling to it still."

Litigants are entitled to submit their causes to a tribunal free from prejudice and bias and whose integrity is above suspicion.

Not only this, but a judge is entitled to avoid unneccessary and embarrassing positions in which his reputation for judicial fairness may be subject to unjust criticism.

Political prejudice or bias, I am aware, is no objection to a judge, yet it has been the prolific source of injustice and wrong, and even cruelty, from time immemorial, and always will be until the people adopt some way of selecting their judicial officers independent of their party affiliations and freed from party obligations. Judges of courts of final resort should enjoy the approbation of the whole people without regard to party lines, and under no circumstances should they be offensively partisan.

Private citizenship is preferable to a judgeship hampered with the lack of public confidence in the ability, integrity or legal acumen of the incumbent.

As this is the last act of my judicial career, I bid my colleagues, lawyers, litigants and the people a kindly farewell.

With charity for all and enmity towards none,
My judicial work is forever done.