STATE *ex rel.* LOU SMOLESKI, *etc.*

*v.*

THE COUNTY COURT OF HANCOCK COUNTY, *etc., et al., and* RALPH J. PATRICK, JR.

(No. 12816)

Submitted March 18, 1969.            Decided March 28, 1969.

22

BROWNING, JUDGE:

Petitioner Lou Smoleski, the Democratic nominee for the office of sheriff of Hancock County, filed his petition for a writ of mandamus in this Court on March 13, 1969. The petition alleges that at the general election held in Hancock County on November 5, 1968, he received the highest number of votes for the office of sheriff and upon completion of the canvass was issued a certificate of election on December 19, 1968. Thereafter on the petition of the respondent Ralph J. Patrick, Jr., the Republican nominee for sheriff, this Court issued a writ of mandamus requiring the board of canvassers to reconvene and re-count the ballots cast in precinct 32 in accordance with the directions set forth in a written opinion handed down February 4, 1969, *(State ex rel. Ralph J. Patrick, Jr. v.*

*County Court of Hancock County, etc.,* 152 W. Va. 592, 165 S. E.2d 822) and on February 10, 1969, upon completion of such recount the oath of office as sheriff was administered to Ralph J. Patrick, Jr. The petition then alleges that within ten days after February 10, 1969, the petitioner served notice on Patrick of his intention to contest the election and filed the same with the county court with the request that they begin hearing such contest; that the court refused to do so but recessed until February 13, 1969; on February 13, the contest was continued until February 21 when it was continued to February 28; on February 28 it was continued until March 3 and on March 3 the contest was again continued until March 14, 1969, all over the objections of the petitioner. The petition then alleges that the respondent members of the county court intend to delay such hearings and to refuse to complete such contest within the three months permitted by law in an effort to deny to petitioner his right to the office of sheriff and prays that a writ of mandamus be awarded directing the respondents, other than Ralph Patrick, Jr., to forthwith hear the contest between the petitioner and Patrick and to complete the same prior to May 9, 1969, and to declare the true result of such election. On March 13, 1969, this Court issued a rule to show cause why the relief prayed for should not be granted returnable before this Court on March 18, 1969. On the return day the respondent Patrick appeared and filed his demurrer, plea in abatement, answer and motion to dismiss the rule on the ground that it was improvidently awarded. There was no appearance by the other respondents; that is, the county court and the individual members thereof, and the petitioner made an oral motion in open Court to dismiss Patrick as a party respondent, which motion was sustained by a majority of the Court while Judges Browning and Calhoun would refuse, and thereupon counsel for relator moved for a "peremptory" writ of mandamus on the ground that there being no defense in the case he is, without more, entitled to the writ as prayed for.

The Constitution of this State has provided for contested elections between opposing candidates from the birth of the State. Article 8, Section 24, provides as far as is pertinent that county courts ". . . shall, in all cases of contest, judge of the election, qualification and returns of their own members, and of all county and district officers, subject to such regulations, by appeal or otherwise, as may be prescribed by law." Chapter 3 of the Code, entitled *Elections,* implements this Constitutional provision and all statutory references herein are to articles and sections of that chapter as last amended by the Legislature of this State. The vital language of Code, 3-7-7, as amended, is: "The hearing may be continued by the court from time to time, if it be shown that justice and right require it, but not beyond three months from *the day of election."* (Italics supplied.) The controlling issue in this proceeding is a determination of the meaning of these four italicized words. That requires a review of the history of the pertinent provisions of Code 3-7-6 and 7, as amended. It also calls for an evaluation of the decisions of this Court particularly those following soon after material changes in the pertinent sections of the Code were made by the legislature during the last decade of the nineteenth century.

Chapter 100, Acts of the Legislature, 1863, provided, with regard to county and district offices, for a canvass of the returns and a declaration of results by the canvassers, except where notice was given of an intention to contest. The act then provided: ". . . In such cases no declaration of the result shall be made; but the board shall appoint a day, not less than five nor more than twenty days thereafter, when they will hear and consider such written depositions . . . and such other evidence, as may be produced. They may continue the hearing from time to time if it be shown that justice and right require it, but not beyond the twentieth day after the day first appointed for the hearing . . . ." Chapter 118, Acts of the Legislature, 1872-3 changed this procedure somewhat, in-

corporating the language of the present Code, 3-7-6, as amended, as to the notice of contest in writing with a list of disputed votes within ten days after the declaration of result and changed the pertinent language of Code 3-7-7, as amended, to read: ". . . They may continue the hearing from time to time if it be shown that justice and right require it, but not beyond the time designated for such officer to qualify. . . ." This latter provision also was apparently unsatisfactory and by the Acts of 1882, the legislature again amended 3-7-7 to read: "The hearing may be continued by the court from time to time, if it be shown that justice and right require it, but not beyond three months from the day of election." which language, as hereinbefore noted has been carried intact through subsequent amendments into the present statute.

Two other acts of the legislature; Chapter 89, Acts of 1891, Regular Session, Section 89, Acts of the Legislature, Regular Session, 1893, Section 89, although neither refers to an election contest, are we believe important in resolving the specific issue presented for decision in this case. By the amendment of 1891 circuit courts were given jurisdiction of the writ of mandamus to require "Any officer or person, upon whom any duty is devolved by this chapter . . . to perform the same . . ." By the 1893 amendment this Court was specifically empowered by mandamus to require election officials to perform the duties required of them under the chapter on Elections. This is the pertinent language: "A *mandamus* shall lie from the supreme court of appeals, or any one of the judges thereof in vacation, returnable before said court, to compel any officer herein to do and perform legally herein any duty required of him." Prior to the Acts of 1891 and 1893 with regard to the applicability of mandamus in election cases it was necessary for a losing candidate to go through a contest before the county court and if still the loser seek a review by way of certiorari to the circuit court. Thereafter if still unsuccessful he could petition this Court for a writ of error. *Dunlevy* v. *County*

*Court*, 47 W. Va. 513, 35 S. E. 956, is an example of the delay that resulted under the old procedure. In that case Dunlevy and one Davis were opposing candidates for the office of county commissioner of the county of Marshall. Upon the canvass Dunlevy appeared to be the winner and Davis demanded a recount, at the end of which Davis had a majority of three. Dunlevy applied to the circuit court for a certiorari which was awarded and that court remanded the case with directions that the board of canvassers reconvene and recount certain illegally rejected ballots which would have resulted in the election of Dunlevy whereupon Davis obtained a writ of error from the Supreme Court of Appeals and the case was finally decided on March 24, 1900, approximately a year and a half after the election in November, 1898. Unfortunately, no cases interpreting the provisions of the Acts of 1863, 1872-3, or placing a contemporary interpretation on the "three months" provision of 1882 have been found. However, the following statement in the *Dunlevy* opinion may be significant: "Is *certiorari* a proper remedy? It is certainly inadequate. It being a mere appellate process, subject to the law's delays, the term of office may expire before relief can be afforded. In this case almost two years *has* elapsed, and the *end is not yet.*" (Italics supplied.) In *Daniel* v. *Simms*, (1901) 49 W. Va. 554, 39 S. E. 690, the losing candidate for sheriff of Fayette County after a recount, in the election of November 6, 1900, sought a writ of mandamus in the Circuit Court of Fayette County. It was granted and an order was entered that would have made Daniel, the petitioner, the winner. This Court granted a writ of error to that judgment and affirmed it. It may be noted that although the election was held on November 6, 1900, the decision by this Court was on September 7, 1901. In the majority opinion Judge Poffenbarger used this language:

> How are statutes to be construed? How is the meaning of words in a statute to be ascertained? How far is it permissible to inquire into the con-

ditions existing at the time of the passage of the act? From what sources, and by what rules is the legislative intent to be ascertained? Are the matters of history and legislation, above detailed, entitled to any weight or consideration in the solution of this question? The answers come from the highest court in the land.

"Where the language of a statute is in any manner ambiguous, or the meaning doubtful, resort may be had to the surrounding circumstances, the history of the times, and the defect or mischief which the statute was intended to remedy." . . .

The dissenting opinion in the *Daniel* case is interesting.

It is evident that it was the legislative intent to put an end to the interminable delays in deciding election cases and in addition to the two amendments relating to mandamus, Chapter 6, Section 3, of the Code of 1899, contained the language now before us that: "The hearing may be continued by the court from time to time, if it be shown that justice and right require it, but not beyond three months from the day of election." The first case in which this Court was called upon to determine the meaning of that language was *Stafford* v. *County Court*, 58 W. Va. 88, 51 S. E. 2. That case was decided by this Court on May 27, 1905. However, that was the second time that the case had made its way to this Court, the first decision having been rendered on December 20, 1904. In *Stafford* v. *Board of Canvassers*, 56 W. Va. 670, 49 S. E. 364, Stafford was the Democratic candidate for prosecuting attorney of Mingo County in the election held on November 8, 1904, and his Republican opponent was John A. Sheppard. In that case Stafford sought a writ of mandamus invoking the original jurisdiction of this Court relying upon the amended statute heretofore quoted of 1893 but after full hearing the writ was denied with directions in the opinion for the court to proceed to count certain ballots. As to what transpired after the first decision I quote from President Judge Brannon's opinion in 58 W. Va., at page 89, 51 S. E. 2: "Pursuant

to the mandate of the Supreme Court the canvassers met and proceeded with the recount, and on the 2nd day of February, 1905, the canvassers found and declared that Sheppard had been elected. On the 10th day of February, 1905, Stafford served a notice upon Sheppard that he would contest his election and file the notice with the county court at its next term. On the 24th day of February, the county court met in regular session, and Stafford presented to it the said notice of contest and asked that it be filed and the proceeding docketed in said county court, but the court refused to entertain or docket the notice; and later Stafford asked this Court to award a *mandamus* to compel the county court and its members to allow said notice of contest to be filed and to docket the contest proceeding and hear and determine the same." Among the grounds asserted by the respondents was that the County Court of Mingo County had lost jurisdiction to hear the contest inasmuch as more than "three months from the day of election" had passed and inasmuch as the statute contemplated that the contest must be ended within three months from the election the notice came too late. In the unanimous opinion Judge Brannon answered that objection in the following language: "To this we reply: 1. That language refers to a contest proceeding already docketed in the court. It presupposes that a notice of contest has been filed and the proceeding on the court docket, and it is designed to forbid delay and procrastination in the hearing and decision of the case. It is not designed to fix a time for the commencement of the proceeding. That is done by those other provisions of the statute fixing the time within which notice must be served by the contestant on the contestee, and fixing the time for the presentation of that notice to the county court. The provision just quoted has no relation to the commencement of the case, to the origination of the case, but only to its continuance as a pending case after it had been once brought into being." Judge Brannon did not stop with that statement but continued with language that could only be described

as dicta in asserting that he would "hesitate long" before holding that a contested hearing could not be continued beyond three months from the date it began although admitting that the statutory language was prohibitory. We are not concerned with the dicta but we are squarely faced with the holding in that case that the day or the date of the election does not mean the day on which the voters go to the polls but means instead the date on which the last valid certificate of election is given to a candidate. These are the second and third syllabus points in the second *Stafford* case:

> 2. The provision of section 1, chapter 6, Code of 1899, that notice of contest for a county office shall be given within ten days after the result of an election has been declared, means the last legal binding declaration of result, where there have been two declarations, one irregular.

> 3. The provision of section 2, chapter 6, Code of 1899, that a pending contest for a county office shall not be continued more than three months after the election, applies only to a contest actually pending, and does not apply to or limit the time for giving or filing notice of contest.

Some years later, in 1944, this Court held in the single syllabus point of *Nelson* v. *Nash*, 126 W. Va. 568, 29 S. E. 2d 253: "That part of Code, 3-9-3, which prohibits a continuance of the hearing of an election contest beyond three months from the day of election, limits the jurisdiction of the county court; and an agreement between the contestant and contestee that such continuance may be had neither extends nor restores the authority and power of the county court once they are lost by lapse of time." At the election of November 3, 1942, Nelson and Nash were opposing candidates for the office of commissioner of the county court of Cabell County. The following is from the statement of facts in the unanimous opinion:

> . . . The canvass of the election disclosed that Nash received a majority of the votes cast. Nelson in due time demanded and was granted a

recount, the result of which also disclosed that Nash had received a majority of the ballots cast.

On December 24, 1942, Nelson served a notice of contest of the election on Nash, . . .

By agreement of counsel "the hearing of the contest" was continued to January 11, 1943, and thereafter to February 15, 1943. It will be noted that the last mentioned date was more than three months subsequent to the general election of 1942; to wit, November 3. The date when the recount ended and Nash received his certificate of election from the county court is not mentioned in the opinion. It was obviously well within three months was the view of this Court at that time that the three-months period in Code, 3-7-7 began to run on November 3, 1942, and not on or after December 14, 1942, when Nash must have received his certificate of election to permit Nelson, on December 24, to serve a notice of contest upon Nash inasmuch as ten days is the mandatory limit there-prior to February 15, 1943. Such would indicate that it for. The writer of the opinion had this to say with reference to the language heretofore discussed in the second *Stafford* case: "The expression of the learned Judge who wrote the opinion in *Stafford* v. *County Court, supra,* with reference to the statute herein discussed is *obiter,* and although we regard the utterance with great respect, it being unnecessary for a decision of the *Stafford* case, its value as a precedent is not apparent." The opinion then states, excluding the citation of authorities: "At the inception of the proceeding, the County Court of Cabell County undoubtedly had jurisdiction, but it failed to exercise it. Nothing was done in this contest proceeding, except to serve a notice, docket it for hearing, and enter two agreed orders of continuance. In the meantime the three months had elapsed. Jurisdiction once existing may lapse by failure to exercise it within the time limited by statute. . . The question which would arise had the contest been in process of hearing when the three months elapsed is not here presented, and we therefore express no opinion thereon."

As stated earlier in this opinion after the decision of this Court in *Patrick* v. *County Court of Hancock County, etc.,* 152 W. Va. 592, 165 S. E.2d, 822, a writ of mandamus was awarded to Patrick the Republican nominee for sheriff directing the county court to reconvene as a board of canvassers and recount certain ballots in Precinct 32 in accordance with directions contained in the opinion of that case. Also as heretofore stated, that was done and Patrick was declared the winner. Within ten days thereafter as provided by statute Smoleski served upon Patrick his notice of contest and thereafter it was duly filed with the county court. It will be observed that such notice was served more than three months after November 5, 1968, that being the date on which the last general election was held. In the combined cases of *State ex rel. Palumbo* v. *County Court* and *State ex rel. Loop* v. *County Court,* 151 W. Va. 61, 150 S. E.2d 887, primary election cases in which two defeated candidates sought writs of mandamus against the County Court of Kanawha County to require it to begin contests, the recounts having been completed, this Court granted the writs on September 13, 1966. Since the primary election of that year was held on May 10, more than three months had elapsed from the day on which the voters cast their ballots in that primary election to the date when this Court granted the writs. This is the first syllabus point of that case: "The wording of the statute with regard to the three months period contained in Code, 3-7-7, as amended, beyond which an election contest is not to be prolonged, refers or pertains only to continuances of hearings from time to time in election contest cases in order to require such hearings to be completed as soon as possible after the date of the election." It should be observed that primary election contests are comparatively new as far as the legislature of this State is concerned, the first legislation regarding them having been passed in the year 1915. However, by the provisions of Code, 3-5-20, as amended, contests are provided for in primary elections and that section specifically states that "The procedure in such case shall be the same as that

governing the contest of a general election by candidates for county offices or offices in magisterial districts." That section provides as does the pertinent general election statute that a decision of the county court upon such a contest may be reviewed by the circuit court of the county and by the Supreme Court of Appeals of this State.

In *Qualls* v. *Bailey*, 152 W. Va. 385, 164 S. E.2d 421, decided by this Court on October 25, 1968, syllabus point one, and portions of the opinion of the *Palumbo* case were "disapproved.". This is the first syllabus point in that case: "The provisions of Code, 3-7-7, as amended, limiting the jurisdiction of a county court to hear and determine election contests to a three months period from the date of the election, applies to both primary and general elections and is mandatory; and, upon the expiration of such three months period, a county court is without jurisdiction to proceed to determine an election contest theretofore pending before it." Insofar as the *Qualls* case held that the three-months period in Code, 3-7-7, began to run on the day on which voters went to the polls and not when the last valid certificate of election was delivered to the winning candidate it is expressly overruled and such portions of the syllabus and opinion in the *Palumbo* case as are consistent with the decision of the Court in this case are approved and reinstated. Also, the *Nash* case is overruled insofar as the decision therein is in conflict with the decision of the Court in this case.

It is with extreme reluctance that the writer of this opinion agrees with the majority of this Court that the language "day of election" in 3-7-7 does not mean in this case November 5, 1968, that being the day that a general election was held in this State and the people of Hancock and the other fifty-four counties of this State went to the polls and cast their ballots. But, as so aptly put by Judge Dent, in his dissent in the *Daniel* case, "It is better than that confusion should continue to prevail in our elections, that the questions here raised should be settled

according to precedent, though settled unjustly, although it is better still if they are settled justly."

Therefore it is the opinion of this Court that the writ of mandamus shall issue directing the respondent members of the County Court of Hancock County to promptly assemble as an election contest court as provided by law and with diligence and expedition hear the evidence of the contestant and contestee and render a decision within the time provided by law.

*Writ awarded.*

STATE *ex rel.* LOU SMOLESKI, *etc.*

*v.*

THE COUNTY COURT OF HANCOCK COUNTY, *etc., et al.*

(No. 12817)

Submitted March 18, 1969.     Decided March 28, 1969.

*Preiser, Greene & Hunt, Stanley E. Preiser, W. Dale Greene,* for relator.

*Pinsky, Mahan, Barnes & Watson, Frank Cuomo, Jr.,* for respondent Patrick.