STATE *ex rel.* TOM C. CHAFIN, *et al.*

*v.*

THE COUNTY COURT OF MINGO COUNTY,
WEST VIRGINIA *and* C. J. "BEN" HAMILTON,
*as President* of *Said County Court*

(No. 13239)

Submitted September 13, 1972. Decided September 15, 1972.

Opinion Filed October 10, 1972.

Dissenting Opinion October 10, 1972.

*William L. Jacobs,* for relators.

*Slaven, Staker & Smith, W. Graham Smith, Jr., John M. Richardson,* for respondents.

BERRY, JUDGE:

This is an original proceeding in mandamus instituted in this Court on September 6, 1972 in which the relators,

Tom C. Chafin, a Democratic candidate for the office of Sheriff, Howard B. Chambers, a Democratic candidate for the office of Assessor, Estil L. "Breezy" Bevins, a Democratic candidate for County Executive Committee, Mrs. Carl E. Riggs, a Democratic candidate for County Executive Committee, Melvin Brooks, a non-partisan candidate for the Board of Education, and Pearley Epling, a non-partisan candidate for the Board of Education, seek a writ of mandamus to compel the respondents, The County Court of Mingo County and C. J. "Ben" Hamilton, as President of the Court, to proceed without delay to conclude the primary election contest instituted by the relators and to decide the election contest before the respondents lose jurisdiction to decide it.

A rule was issued by this Court returnable September 12, 1972 at which time this proceeding was heard upon the petition of the relators, the answer and exhibit of the respondents, the demurrer and replication of the relators to respondents' answer, the rejoinder of the respondents to the relators' replication, the surrejoinder of the relators to the respondents' rejoinder, the written briefs and the oral arguments of the attorneys for the respective parties, and was submitted for decision.

On September 15, 1972 this Court, by order, awarded a writ of mandamus which granted the relief prayed for in the petition. This opinion is now filed for the purpose of stating the reasons for the action of this Court in granting the writ.

The relators served their notices of contest of the May 9, 1972 primary election on the respondents within ten days after the certification of results on June 21, 1972. Two of the respondent members of the Circuit Court of Mingo County were running for offices that were being challenged. C. J. "Ben" Hamilton was a candidate for membership on the Democratic Executive Committee of Mingo County and Stewart Justice was a Democratic candidate to succeed himself as a member of the County Court of Mingo County. However, Stewart Justice

disqualified himself at the outset of the contest proceedings on July 26, 1972.

By letter dated July 13, 1972 counsel for the relators requested the County Court of Mingo County to set a hearing date to begin the election contest. The hearing was then set by the County Court to begin on July 26, 1972. However, the hearing was delayed until July 31, 1972 while certain original documents, which had been impounded by federal officials who were investigating the election, were released by the federal court.

On August 1, 1972 the election contest was recessed until August 7, 1972 after one of the members of the County Court received news of the tragic death of a member of his family. After the hearing resumed, the relators presented their evidence and on August 17, 1972 the relators rested their case.

Following the completion of the relators' case, counsel for the respondents moved for a continuance until September 1, 1972 whereupon counsel for the relators objected and finally the President of the County Court, C. J. "Ben" Hamilton, declared that no further hearings would be conducted until August 28, 1972 and that after that date he would not permit his duties as a Commissioner of the Court to interfere with his duties as a schoolteacher. Counsel for the relators filed a petition for a writ of mandamus on August 18, 1972 before the Circuit Court of Mingo County and a rule to show cause was issued returnable August 21, 1972 at which time the Circuit Court, on agreement of both parties, entered an order requiring the County Court to reconvene August 24, 1972 and that all sessions after August 28, 1972 would begin at 3 o'clock p.m. and end at 9 o'clock p.m. with one hour off for supper because the President of the County Court, C. J. "Ben" Hamilton, was also a schoolteacher and would not be available until after 3 o'clock p.m.

The respondents had been presenting their case since August 24 and as of September 12, 1972 the respondents

had not even completed presenting evidence on the first of the four precincts that were being contested.

It is apparent from the facts involved in the case at bar that the respondents did not conduct the election contest case with dispatch. In the first place, it was the duty of the county court, after receiving the notice of the contest, to conduct hearings in connection with the contest at the earliest possible time without being requested to set the case for hearing by one of the parties. It became necessary for the relators to obtain a writ of mandamus in the Circuit Court of Mingo County to compel the respondents to reconvene before August 28, 1972 in order to conclude the election contest within the time prescribed by law. However, the order of the circuit court did not specifically direct the respondents to decide the election contest case, declare the true results and enter the results on the records of the court as required by Code, 3-7-7, as amended, and as requested by the relators in this proceeding. It appears that one of the respondents, C. J. "Ben" Hamilton, the president of the county court, is also a schoolteacher and apparently he did not desire to have his duties as a commissioner of the county court in connection with holding hearings in this election contest case interfere with his duties as a schoolteacher. His duties as an elected official were paramount to his duties as a schoolteacher. He could obtain a substitute for his position as a schoolteacher but not for his position as a member of the County Court of Mingo County. Election contest cases should be disposed of by the county court within the shortest period of time possible in order to allow time for appeals if necessary. *Loomis v. Jackson,* 6 W.Va. 613, *State ex rel. Palumbo v. County Court of Kanawha County,* 151 W.Va. 61, 150 S.E.2d 887. It was held in the fifth point of the syllabus of the *Palumbo* case that: "An election contest should be held at the earliest possible time and should be commenced and ended within a comparatively short space of time."

It was held in the case of *State ex rel. Smoleski v. County Court of Hancock County,* 153 W.Va. 21, 166 S.E.2d 777, that the hearing in an election contest case cannot be continued beyond three months from the last legal binding declaration of the results of such election and thus a writ of mandamus was granted directing the County Court of Hancock County to promptly conduct the election contest case as provided by law and with diligence and expedition hear the evidence of the contestant and contestee and render a decision within the time provided by law. In the case of *State ex rel. Smoleski v. County Court of Hancock County,* 153 W.Va. 307, 168 S.E.2d 521, a writ of mandamus was granted directing the County Court of Hancock County to complete an election contest case promptly and without delay and within the time prescribed by law.

It was held in the first syllabus point of the case of *State ex rel. Hager v. Oakley,* 154 W.Va. 528, 177 S.E.2d 585, that: "The hearing in an election contest case before a county court may be continued from time to time, but not beyond three months from the date of the last declaration of the result of the election; and it is the duty of the county court in such election contest case to declare the true results of such election and to have the results entered on the records of the court within the three months period."

It was also stated in the *Hager* case, on page 532, that: "It is true that it is the clear duty of the county court to decide an election contest case at the conclusion of the hearing and before the expiration of three months. Code, 3-7-7, as amended. If this duty is not performed the county court can be compelled to act in deciding an election contest case before it loses jurisdiction but not as to how to decide such case."

Although the attorney for the respondents indicates in his brief and in the oral argument that the respondents were performing their statutory duty and that the presentation of evidence would be completed prior to the time the county court loses jurisdiction of the case, he

would not guarantee that the court would decide the case or declare the true results of the election on or before September 21, 1972 and within three months of the declaration of the results of the election. Consequently, the writ prayed for in this case was awarded to compel the County Court of Mingo County to decide the election contest case and to "declare the true results of the election, and cause the same to be entered on the records of the court" on or before September 21, 1972 because this Court was of the opinion that the election contest case had not been proceeded with in a diligent manner and that if it were not decided by the county court and the results recorded on or before September 21, 1972 the court would lose jurisdiction to decide the contest as indicated in the *Hager* case, which might result in a miscarriage of justice by not allowing the opportunity for the losing party to appeal the election contest case and have it reviewed by a higher court.

For the reasons stated in this opinion, the writ was awarded.

*Writ awarded.*

CARRIGAN, JUDGE, dissenting:

I respectfully dissent from the action of the majority in awarding a writ of mandamus on September 15, 1972, since I believe such action was premature.

Relators agree that the respondents, The County Court of Mingo County, had until September 21, 1972, to complete the hearing of the contested election and enter an order declaring the true results thereof. This critical date is six days subsequent to the issuance of the writ of mandamus on September 15, 1972.

It further appears that relators sought and heretofore obtained a writ of mandamus in the Circuit Court of Mingo County concerning this election contest; and that the agreed order in such proceeding, among other provisions, concluded as follows: "such sessions to

continue . . . until said election contest shall be concluded in accordance with law and within the time prescribed by law."

This Court has held on numerous occasions that to be entitled to a writ of mandamus there must be a clear legal right, a clear legal duty and lack of other clear adequate legal remedy.

As to the clear legal right of relators to relief by mandamus on September 15, 1972, I do not believe that relators have satisfied this requirement. As heretofore stated, the final date for the County Court to act, namely, September 21, had not yet arrived. Are we to presume that public officials will not perform the duties required of them? I think not. Are we to anticipate that actions not yet required to be performed will not be done as required? I think not.

Certainly the provisions of Section 7, Article 7, Chapter 3, Code of West Virginia, 1931, as amended, impose a clear duty on the County Court to complete the contest timely. I feel that this covers the clear legal duty requirement for a writ of mandamus, but the time for performance did not expire until September 21, 1972.

Relators have clearly shown that *they did* have *another clear adequate legal remedy* of which they took advantage. Relators obtained a writ of mandamus in the Circuit Court of Mingo County prior to the time relators applied to this Court, and the writ so awarded by the Circuit Court ordered that the election contest be concluded in accordance with law *and within the time prescribed by law.*

The writ issued by this Court is merely repetitious of the prior writ of mandamus issued by the Circuit Court and only substitutes the date, "September 21, 1972," in lieu of the words "and within the time prescribed by law."

The majority may have been influenced in their decision to award the writ on September 15, by a prior holding of

this Court in *State ex rel. Hager v. Oakley,* 154 W.Va. 528, 177 S.E.2d 585 (1970), which in my view had the effect of denying any authority of this Court to require the County Court to enter an order, after the statutory time for the County Court to act in an election contest had passed, where the County Court failed to timely act as required by Section 7, Article 7, Chapter 3, above-cited.

I strongly disagree with the holding in *State ex rel. Hager v. Oakley, supra,* insofar as it holds or intimates that this Court lacked authority to require the County Court to enter a proper order after the three months would have expired.

I am appalled to think that this Court, the highest state court of West Virginia, feels it is prevented from acting to require a public body or official to act or perform a statutory duty merely because that public body or official failed, neglected, or refused to act within the time required. Such a holding by this Court would allow public officials to flaunt their statutory duties by mere inaction or neglect.

For the foregoing reasons, I would have denied the writ on September 15, 1972.